## IPPOLITO et al. v. UNITED STATES.
### Nos. 8170, 8171.

Circuit Court of Appeals, Sixth Circuit.
Jan. 15, 1940.

Marc J. Wolpaw, of Cleveland, Ohio, for appellant Sam Ippolito.

Howell Leuck, of Cleveland, Ohio, for appellant Tony Panzarella.

Frank Wiedemann, of Cleveland, Ohio (E. B. Freed and Frank Wiedemann, both of Cleveland, Ohio, on the brief), for appellee.

Before HICKS, SIMONS, ALLEN, Circuit Judges.

SIMONS, Circuit Judge.

The appellants were indicted and convicted of the violation of Section 197 of the Criminal Code, § 320, Title 18 U.S.C.A., and were given the mandatory sentence to imprisonment for twenty-five years therein provided. Their appeal challenges the manner of impaneling the jury, the sufficiency of the evidence to support the verdict of the jury, and the fairness of the trial.

Section 197 as incorporated in the Act of March 4, 1909, provided for the punishment of anyone assaulting with intent to rob or robbing a person having lawful charge, control or custody of mail matter, and provided that if in attempting or effecting such robbery the life of the custodian is put in jeopardy by the use of a dangerous weapon, the offender should be imprisoned for twenty-five years. By the Act of August 26, 1935, the scope of the Section was enlarged to include assaults upon and robbery of persons having lawful charge or custody not only of mail matter but of money or other property of the United States.

On April 1, 1938, one Hildebrandt, an accountant, and Louise McIlbaine, a cashier, for the Cedar-Central Apartment project of the Housing Authority of the Department of the Interior of the United States under construction in Cleveland, Ohio, and having charge of money of the United States being used in connection with the project, were robbed of such money by three masked men carrying guns. Five months later in a police show-up at the Cleveland Police Department, a witness, Mary Fajfar, who lived in an apartment near the Cedar-Central project, undertook to identify the appellants as two of the men who had committed the robbery. The appellants were thereupon remanded to the United States authorities, indicted and brought to trial.

Upon the impaneling of the jury, the list of available jurors in attendance having been exhausted, the court directed the Deputy Marshal to return sufficient jurymen from the bystanders to complete the panel. In the examination of all jurors by the court, each was, at the request of counsel for the appellants, asked whether any member of his or her immediate family was or had been in the employ of the United States. No response being received, the jury was sworn. The defendants had not exhausted their peremptory challenges. Following the conviction their counsel ascertained that one of the original talesmen sworn was a brother-in-law of the Deputy Marshal, and one of the additional jurors sworn was his nephew, and that the nephew was not drawn from the bystanders but was called upon the telephone by the deputy to come to the courtroom to act as a juror in the case.

The appellants complain that they were not tried by a proper jury; that they were entitled to know the relationship of the jurors to government officers so as intelligently to exercise their right to peremptory challenge, and that the return of additional jurors was not in compliance with the Statute, § 280 of the Judicial Code, Title 28 U.S.C.A. § 417, which requires that jurors sufficient to complete an inadequate panel be returned from the bystanders.

Relationship of a juror to a government officer is not of itself a disqualification. United States v. Wood, 299 U.S. 123, 149, 57 S.Ct. 177, 81 L.Ed. 78. Granting that the defendants were entitled upon request to know of the relationship in order intelligently to exercise peremptory challenge, the query suggested to the court was not such as necessarily to require affirmative response from the jurors whose qualifications are now assailed. It may well have been thought by a brother-in-law or nephew of the Deputy Marshal, that he was not in the official's immediate family. As to the failure of the Deputy Marshal to draw additional jurors from the bystanders, there is doubt that the question was properly raised by the motion for new trial, and in the absence of evidence that the questioned juror was in any wise biased or prejudiced, we should hesitate to reverse on that ground, since the qualification of jurors rests largely within the discretion

of the District Judge and its exercise should not be disturbed except for clear abuse, of which we find none. It is appropriate, however, to say in passing that the practice of a Deputy Marshal in packing the jury with relatives notified by telephone or otherwise, instead of selecting them 'from the bystanders within the letter and spirit of the statute, is strongly condemned.

■ The challenge to the evidence as not supporting the verdict, is based principally upon a contention that the identification of the appellants as the persons who committed the crime, by the witness Mary Fajfar, is so incredible as not to constitute substantial evidence, even though her identification in respect to costume and build is partially supported by a witness who saw their backs while sitting in an automobile behind them, and notwithstanding substantial destruction of an alibi sought to be created for them. Mrs. Fajfar, upon the day of the crime, was looking from her bedroom window, a distance of 193 feet from the parked car of the robbers. She saw one man leave the rear seat of the car, walk toward the project, return, converse with two men seated therein, whereupon all three took guns, walked to the building and entered. About three minutes thereafter, all three returned to the car and drove away. It was 2:55 p. m. upon a clear day, and the witness not only described the costumes of the men but asserted she could tell the color of their hair, although all three wore hats. Five months later she identified the appellants as two of the men. Upon challenge to the accuracy of her observation in cross-examination government agents proceeded to Mrs. Fajfar's apartment, and from her bedroom window made observations of strangers walking by the point where the bandit car was said to have been parked. One was permitted to testify to an identification of the pedestrians. Mrs. Fajfar became somewhat confused in her testimony, and there was doubtless some discrepancy between her evidence at the trial and that given by her at the examination before the commissioner. At one point she confessed that she had become "bungled up."

■ The issue of fact as to the identity of the defendants with the men observed leaving the car at the time of the crime, was one of fact which the court properly submitted to the jury. It was the function of the jury to pass upon Mrs. Fajfar's powers of observation and her credibility. The issue was, nevertheless, a close one, though our conclusion that it was, casts no doubt upon the soundness of the court's judgment in overruling a motion for directed verdict. Rather does it bring into relief the prejudicial character of the District Attorney's argument which is so strongly urged to have swayed the jury to an unjust result.

■ During the prosecutor's argument, he said to the jury: "I wish this jury would keep in mind, I hope that this jury will step warily when it starts to consider this evidence. I hope this jury will keep its eyes open the same as it would if it were walking in a jungle full of rattlesnakes and skunks. I hope that when the jury approaches the consideration of the testimony offered by the defendants it will look at the labels on that testimony, because by the labels on anything that walks you shall know what kind of animals they are. We all know what a skunk will do, from experience."

Upon objection being made, the court admonished the District Attorney that this court, in a previous decision, had disapproved of language of the nature of that used. The District Attorney persisted, saying: "I think we should call names by their right name." He was again mildly admonished by the court, whereupon the court instructed the jury that references to character by names of that sort had been ruled prejudicial error by the Circuit Court of Appeals, and that it was required to follow the rule and instruct the jury to wholly disregard such characterizations— "I think the prosecutor, probably in his zeal, has overstepped the matter and the jury will disregard that."

■ In Pierce v. United States, 6 Cir., 86 F.2d 949, we had occasion to review many of the cases dealing with improper argument of counsel and appeals to the passion and prejudice of a jury. We observed that while by Section 269 of the Judicial Code, as amended, 28 U.S.C.A. § 391, not every technical error which does not affect the substantial rights of parties furnishes ground for reversal, yet the inquiry must always be as to whether in view of the whole record the impression conveyed to the minds of jurors by prejudicial matter is such that the court may fairly say it has not been successfully'

eradicated by the rulings of the trial judge, his admonition to counsel and his instruction to the jurors to disregard it. Sometimes a single misstep may be so destructive of a right of a defendant to a fair trial that reversal must follow. Pharr v. United States, 6 Cir., 48 F.2d 767. Frequently error that might otherwise be noted is disregarded where the evidence of guilt is so overwhelming that the error cannot be said to be prejudicial. Fitter v. United States, 2 Cir., 258 F. 567, 573; Cf. Bogy v. United States, 6 Cir., 96 F.2d 734. There was no overwhelming evidence of guilt in the present case.

It ought to be unnecessary to again admonish counsel as we did in the Pierce case, or to quote from decisions of the Supreme Court as to the limits of fair comment, but if prosecuting officers persist in ignoring the warning of the courts, develop no consciousness of obligation imposed upon them by their high office, we must again call attention to what was said in Berger v. United States, 295 U.S. 78, 89, 55 S.Ct. 629, 633, 79 L.Ed. 1314. "The United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done. As such, he is in a peculiar and very definite sense the servant of the law, the twofold aim of which is that guilt shall not escape or innocence suffer," and with aim to preserve the high repute of Federal Courts for fair and impartial administration of law, to repeat what was cited from New York Central Railroad Company v. Johnson, 279 U. S. 310, 318, 49 S.Ct. 300, 303, 73 L.Ed. 706, "Public interest requires that the court of its own motion, as is its power and duty, protect suitors in their right to a verdict, uninfluenced by the appeals of counsel to passion or prejudice," and again from the Berger case, "But the situation was one which called for stern rebuke and repressive measures and, perhaps, if these were not successful, for the granting of a mistrial. It is impossible to say that the evil influence upon the jury of these acts of misconduct was removed by such mild judicial action as was taken."

Since it is our judgment that the case be retried, it is necessary to say that we think the evidence of observations made by government officers from Mrs. Fajfar's apartment, was inadmissible. The question before the jury was not whether law enforcement officers trained to make accurate observations, and with attention concentrated upon a special objective, could identify strangers immediately after observing them from the window, but whether Mrs. Fajfar, five months after seeing the robbers from her distant apartment under the conditions as they then existed, could identify the appellants as the criminals.

Judgment reversed and the cause remanded for a new trial.