**Raymond C. HUMES, petitioner,**

v.

**Allan L. ROBBINS, Warden, Maine State Prison.**

No. 1068.

United States District Court,
D. Maine, S. D.

Feb. 18, 1955.

---

9. 9 Cir., 217 F.2d 203, 205.

10. Wasserman v. Perugini, 2d Cir., 173 F. 2d 305.

Silas Jacobson, Portland, for petitioner.

Alexander A. LaFleur, Atty. Gen., and Roger A. Putnam, Asst. Atty. Gen., for respondent.

WOODBURY, Circuit Judge.

The time has now come to complete my opinion in Humes v. Robbins, Warden etc., Civil No. 1068 on the docket of the United States District Court for the District of Maine.

In my earlier opinion of May 25, 1954, D.C., 121 F.Supp. 552, it appears that Humes applied to Judge Clifford of the above court for release by writ of habeas corpus from the custody of the Warden of the Maine State Prison, that Judge Clifford disqualified himself and I was designated by Chief Judge Magruder to act in the matter in his place, and that pursuant to that designation I held a hearing on the merits in Portland last May but withheld final decision until Humes should present his federal claim, *i. e.* his claim for relief under the "Due Process" clause of the Fourteenth Amendment to the Constitution of the United States, to an appropriate state court or state court justice. Promptly after my opinion came down Humes applied to a justice of the Supreme Judicial Court of Maine for a writ of habeas corpus grounded upon deprivation of federally guaranteed rights, but on the Warden's motion the justice dismissed the application for the reason that habeas corpus was not the remedy provided by the law of Maine for the correction of the irregularities alleged by Humes to have occurred at his trial. Humes then applied *in vacation* to a justice of the Superior Court of the State of Maine for a writ of error coram nobis, which the justice dismissed without prejudice on the ground that in vacation no member of the Superior Court had power to entertain the writ or issue a valid order on the merits thereof. Humes therefore waited until the next term of the Superior Court for the County of Kennebec wherein he had been convicted and then filed another application for writ of error coram nobis. The justice presiding at that term held a hearing on the merits and on January 29, 1955, denied Humes' petition on the ground that although there were irregularities in the summoning of some members of the jury which found Humes guilty, Humes had nevertheless had a fair and impartial trial and "his rights under the laws and Constitution of the State of Maine and under the Constitution of the United States" had not been violated.

Since Humes is a pauper, and as such is denied access to the highest court of his state, I shall assume as I have be-

fore (see my prior opinion in this case and Robbins v. Green, 218 F.2d 192, decided by the Court of Appeals for this circuit on December 21, 1954 and the cases cited therein) that Humes has exhausted his available state remedies. It therefore becomes necessary for me to dispose of Humes' application on the merits.

Humes is at present confined in the Maine State Prison serving a sentence imposed at the February Term, 1950, of the Superior Court of the State of Maine for the County of Kennebec after a jury had found him guilty of breaking and entering the railroad station at Winthrop, Maine, and larceny therefrom of a few hundred dollars. For some reason which the evidence does not disclose Humes' trial aroused a lot of local interest with the result that so many of the jurors regularly summoned for service were excused for cause that talesmen had to be called in to complete the jury. One of Humes' complaints has to do with the way these talesmen were selected.

I am not concerned with whether these talesmen were selected in accordance with the statutory law of Maine or whether they were not. That is a question for the Maine courts to decide. Under the Fourteenth Amendment the states are free to regulate their criminal procedure in accordance with their conceptions of policy and fairness unless in so doing violence is done to "some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." Snyder v. Commonwealth of Massachusetts, 1934, 291 U.S. 97, 105, 54 S.Ct. 330, 332, 78 L.Ed. 674 and cases cited; Brown v. State of Mississippi, 1936, 297 U.S. 278, 285, 56 S.Ct. 461, 80 L.Ed. 682. Thus the function of the federal courts under the Fourteenth Amendment is not to prescribe procedures for the selection of state juries in criminal cases. It is only to protect the integrity of the trial process employed in the states by striking down any device a state may set up whereby the judicial process is reduced to a sham and its courts are organized to convict. Fay v. People of State of New York, 1947, 332 U.S. 261, 294, 67 S.Ct. 1613, 91 L.Ed. 2043. I must look then to see whether the method used for selecting the talesmen who sat on Humes' jury offended recognized standards of fundamental fairness.

Humes claims that recognized canons of fairness were violated at his trial for the reason that the talesmen selected for service on the jury which found him guilty were picked in the first instance by the sheriff of Kennebec County who had a strong interest in obtaining a conviction since he not only bore a personal grudge against Humes, but was also the arresting officer and the officer who investigated the crime for which Humes was on trial and thus an important witness for the state. The suggestion is that the sheriff, in order to assure a conviction, scoured the county to find persons for service as talesmen who would be predisposed to bring in a verdict of guilty.

It is true that the sheriff was the officer who arrested Humes, the officer who investigated the crime for which Humes was on trial, and an important, although perhaps not the most important, witness for the state. Under these circumstances, no doubt, as a conscientious officer, he believed Humes to be guilty and sincerely desired that he be found guilty. I do not find, however, that the sheriff bore any purely personal grudge against Humes, or that he purposefully selected persons to serve as talesmen who he thought would be so prejudiced against Humes, or would have such a strong predilection to find him guilty, that they would not give him a fair trial.

When it proved impossible to select 12 qualified persons from among those regularly summoned for service as jurors at the term, the presiding justice ordered the sheriff to bring into court 12 talesmen from the county at large to complete the panel. Humes told his counsel that he mistrusted the sheriff's disinterestedness in selecting talesmen and his counsel took the matter up with

the court. The court thereupon called a conference in chambers with the prosecuting attorney, Humes' attorney, and the sheriff, at which the court ordered the sheriff not to tell the persons he ordered into court for service as talesmen anything about the case upon which they might be selected to sit, or to mention Humes' name in connection with it. It was also then agreed that Humes' counsel might interrogate each talesman as he was called for examination prior to selection as a juror. Humes' counsel, who I find was a thoroughly competent member of the Maine bar with long experience in criminal cases, reported to his client the substance of the understanding reached at the conference with the court. Neither Humes nor his counsel made any further objections to the selection of talesmen by the sheriff.

I find that the sheriff obeyed his instructions to the letter and that he did not hand-pick talesmen with an eye to obtaining a conviction. It is true that of the five talesmen ultimately selected for service on Humes' jury, one was the father of a man who had been a deputy sheriff at the time of the crime, but had not investigated it and at the time of the trial was in military service, that another was the brother-in-law of a deputy sheriff, and that a third worked as a clerk in a store with still another deputy sheriff. I cannot find, however, that these men were selected because the sheriff thought they might be prone to convict, or that they had any emotional predilection for conviction because of their connection with persons associated with the sheriff as his deputies. These three talesmen testified before me and they impressed me as upright, intelligent, impartial, unbiased, and fairminded men who would abide by their oaths to return a verdict in accordance with the law and the evidence.

Furthermore, I find that the presiding justice, being aware of the popular interest in the case and of Humes' suspicions with respect to the sheriff's disinterestedness, took more than ordinary precautions to make sure that the tales-men chosen for service were free from bias and prejudice before he allowed them to take their places on the jury.

While abuses are no doubt possible under the method employed in this case for obtaining talesmen, I cannot find that in this instance the method was used to organize a jury for conviction and thus make the trial a sham.

■ Humes' other complaint has to do with the number seven man on the jury. At the trial it was thought by the presiding justice, and also by Humes and his counsel, that this person was one of those regularly selected and duly summoned by the jury commissioners for service as a juror at the term of court then in session. It subsequently developed, however, in a proceeding brought by the Attorney General of the State of Maine to correct the records of the Superior Court for the County of Kennebec, that although this man had been selected by the jury commissioners from their list of persons eligible for jury service, he had not been notified to attend as a regular juror, but with three others had been picked by the jury commissioners as a "spare" juror, for which there was no statutory authority, and his name given to the clerk of court. As it became evident that a full jury of 12 could not be selected from the jurors regularly in attendance, the clerk of court on his own initiative told the sheriff to order the four "spare" jurors whose names had been given to him into court. The sheriff did so, and the four "spare" men reported and were seated in the courtroom with the remaining regular jurors awaiting call. They were called up for examination as though they were regular jurors and one of them qualified for service and was accepted by the presiding justice and counsel as the seventh member of the panel. Thus, as the Superior Court Justice for the State of Maine found in the Attorney General's proceeding to correct the records of the Kennebec County Superior Court, the seventh juror was neither a regular juror properly summoned for service at the term at which Humes was tried, nor

a talesman summoned by order of the presiding justice for service only in Humes' case.

The question is whether the presence of this man on the jury makes Humes' trial a nullity under the Fourteenth Amendment. I do not think that it does.

Undoubtedly the seventh juror was not chosen in accordance with the statutes of the State of Maine providing for the selection of either regular jurors or talesmen. However, the Superior Court Justice who denied Humes' petition for writ of error coram nobis on the merits, while he deplored the irregularity, ruled that the seventh man was duly sworn as a juror, and was accepted as such by the presiding justice and counsel at the trial, and that under these circumstances the error was not fatal in the absence of any showing that Humes was prejudiced by his presence on the jury.

■ I am not concerned with the correctness of the foregoing ruling as a matter of the law of Maine. Under the Fourteenth Amendment, the states may select jurors in any way they may choose, provided only that the method employed does not exclude persons from jury service "on account of race, color, or previous condition of servitude" in violation of the Act of Congress enforcing the provisions of the Fourteenth Amendment (matters not even remotely involved here), or do violence to some fundamental principle of fairness deeply rooted in our legal consciousness. Fay v. People of State of New York, supra, 332 U.S. at pages 282–284, 67 S.Ct. 1613, 1625.

While the seventh member of the jury was informally selected, his presence on the jury does not shock my sense of legal propriety. He was among those picked by the jury commissioners as fit for jury service, he was in court and examined as to his qualifications to sit on Humes' jury, he was accepted as a juror and duly sworn with the other jurors. Furthermore, he impressed me at the hearing when on the stand as a witness as a fair minded man of intelligence and integrity without bias or prejudice against Humes. Under these circumstances I cannot say that his presence on the jury operated to deprive Humes of his rights under the Fourteenth Amendment.

It is, therefore, Ordered, Adjudged and Decreed that the application of Raymond C. Humes, dated April 2, 1954, for a writ of Habeas Corpus, be and the same hereby is denied.