**Charles TOWNSEND, Appellant,**

v.

**Roy B. ROSS, Chief of Police, Helena, Arkansas, et al., Appellees.**

**No. 19065.**

United States Court of Appeals
Eighth Circuit.

June 20, 1968.

---

Norman C. Amaker, New York City, for appellant; Jack Greenberg and James N. Finney, New York City, and George Howard, Jr., Pine Bluff, Ark., on the brief.

David Solomon, Helena, Ark., for appellees; W. G. Dinning, Jr., Helena, Ark., and Roscopf & Raff, Helena, Ark., on the brief.

Before VOGEL, Senior Circuit Judge, and BLACKMUN and LAY, Circuit Judges.

LAY, Circuit Judge.

Plaintiff, Charles Townsend, seeks redress under 28 U.S.C. §§ 1331, 1343 and 42 U.S.C. 1983 against police officials of Helena, Arkansas, and the bonding company of Roy B. Ross, Chief of Police of Helena, for an alleged beating while under arrest. A jury composed of four Negroes and eight Whites heard the case and denied damages, finding generally in favor of the defendants. This appeal was filed asserting the plaintiff's right to a new trial on the sole ground that the trial court refused to quash the jury list, and more specifically refused to compel the Clerk of the United States District Court for the Eastern District of Arkansas, in the Helena Division, to produce the jury list for inspection before trial. Plaintiff claims that the "jury roll, jury list and jury box" are constitutionally invalid since Negroes have been "deliberately and systematically" excluded.[1]

We hold (1) the trial court did not abuse his discretion in refusing inspection of the jury lists, at the time, and under the circumstances existing when the request was made, and (2) plaintiff has totally failed to sustain his burden of proof that there has been any deliberate or systematic exclusion of Negro jurors.

The chronological order of proceedings is relevant to our discussion:

(1) On May 16, 1966, plaintiff filed a motion to quash the jury roll, jury list and names in the jury box.

---

1. The record indicates that both grand and petit jurors are chosen from the venire lists here requested.

(2) On May 23, 1966, the trial judge, the Honorable Oren Harris, held a pre-trial conference with counsel representing both sides to consider the discovery procedure to be followed, and to allow plaintiff a full opportunity to gather evidence in support of his motion. The court made it clear that he would allow oral examinations of the Clerk of the Court and the Jury Commissioner. The Clerk, who was present, made known his objection to production of the jury lists on the alleged ground that the names were confidential. The court held the question was not before him at that time and that discovery should be pursued in an orderly fashion, with proper questions and objections. The parties left the pre-trial in full accord on the nature of the discovery to be pursued.

(3) On August 3, 1966, answers of Charles F. Cole, Clerk of the United States District Court, were filed in response to interrogatories filed by plaintiff. On September 8, 1966, Answers of J. J. White, Jury Commissioner for the Eastern District of Arkansas, Helena Division, were filed in response to interrogatories filed by plaintiff. Admittedly, none of the answers were helpful to plaintiff in proving discrimination. The answers revealed that jury lists and jury questionnaires did not disclose the race of the proposed veniremen.[2]

(4) In December 1966 the case was called for trial, but counsel for plaintiff requested a postponement because of conflict in other trials.

(5) On May 29, 1967, about one year from the date the trial court originally discussed discovery, the case was again called for trial. Plaintiff's counsel then disclosed at pre-trial that they wanted further discovery orders to inspect the jury lists in order to investigate further their claim of racial discrimination. At that time, the record showed that no discovery had been undertaken by plaintiff other than the filing of interrogatories in August and September of 1966. For the first time plaintiff claimed that answers of the Clerk and Commissioner were evasive. No motions for more specific answers were filed (see Fed.R.Civ.P. 37), no motion for production of any jury lists had been filed, no attempt to depose orally the Commissioner or the Clerk was made (see Fed.R.Civ.P. 26), nor was any subpoena duces tecum served to obtain questionnaires or other jury records (see Fed.R.Civ.P. 45). And, there had been no attempt to investigate the racial makeup of prior juries in the Helena Division. Plaintiff's counsel in oral argument conceded they did not pursue this approach, since the case was a "civil" and "not a criminal proceeding." We know of no rule which allows a showing of discrimination to be by lessor proof in a civil case than in a criminal action.

(6) In the May 1967 pre-trial the trial court indicated that a jury had been called to consider several cases pending in the Helena Division at that time. Nevertheless, the court, in response to plaintiff's counsel's charge that "all the 'key men' used were white," indicated a willingness to allow full and complete examination of both the Clerk and the Commissioner in his presence in order to determine this. *Plaintiff's counsel re-*

---

**2.** The Report of the Judicial Conference Committee on the Operation of the Jury System, was approved by the Judicial Conference of the United States in September 1960, recommended that questionnaires sent to prospective jurors omit questions directed to race or religion. See 26 F.R.D. 409, 436. The new legislation on federal juries provides that the new "juror qualification form" "shall contain words clearly informing the person that the furnishing of any informa-

tion with respect to his race, color, religion, national origin, economic status, or occupation is not a prerequisite to his qualification for jury service, and that such information need not be furnished if the person finds it objectionable to do so * * *." Act of March 27, 1968, Pub.L. No. 90–274, § 1869(h), 82 Stat. 62. See also Avery v. State of Georgia, 345 U.S. 559, 564, 73 S.Ct. 891, 97 L.Ed. 1244 (concurring opinion) (1953).

*fused this opportunity,* saying that without the jury lists such an examination would be a useless gesture. If plaintiff's objection was to be pursued in good faith, this refusal is difficult to understand.[3] Such an examination *un-*

3. The colloquy between the plaintiff's counsel and the trial court shows the positions taken:

"The Court: The Clerk is here. If you want to take any further evidence, discovery or otherwise from him, the Court will permit you to do it. Otherwise, I am going to have to pass on the motion.

"Mr. Amaker: Of course that's the Court's choice, Your Honor. I just wanted to make my position clear for the record that I don't think that the plaintiffs are in a position to gather proof in support of the allegations contained in their motion by a simple examination of the Clerk; that there are other discovery methods which are permitted and permissible under the rules, that in fact have been used in other cases, and I can cite them to the Court, that are required in order for us to be able to make out our case on this pending motion; and that if the Court is now limiting us to merely examining the Clerk, then it's our position that we have been denied a hearing in order to substantiate the allegations of this motion.

"The Court: Well, the Clerk is availble for any further discovery or testimony to inquire into this matter before I pass on the motion, and the Jury Commissioner lives within this city and county and I assume would be available.

"Mr. Amaker: Sir, is it the Court's ruling that the only additional discovery that we are permitted is to take depositions of the Clerk and the Jury Commissioner and no other?

"The Court: I give you the privilege at this time not to take depositions, but to call both the Clerk and the Jury Commissioner for any further testimony that you feel that you would like to have from them in connection with this matter.

"Mr. Amaker: Your Honor, I am simply saying that there is no testimony that could be of value to the plaintiffs or to the Court without some identification, some examination of the racial composition of the jury lists that have been challenged.

"The Court: Well, the Court is giving you that chance now, to try to determine from both the Clerk and the Jury Commissioner.

\* \* \* \* \*

"Mr. Amaker: I see no further need without inspecting the sources that were revealed by the answers to the interrogatories. It would be a fruitless exercise.

"The Court: Well, the Court is not going to accede to your request that they be made available for inspection. And if you do not care to proceed further for testimony to develop the allegations that you have made in connection with your petition and since this matter has gone over as it is, since this is the third session.

"Your associate counsel, Mr. Howard, prevailed upon the Court in December when the matter was scheduled for hearing that it be continued for justifiable reasons in view of his commitment in an important matter in another Court, but without arranging or attempting to arrange any schedule during the regular session in January when we had it here. I called it to the attention at that time and now another six months has gone by without anything further being done toward developing this matter, and now we have come to the point when a jury has got to be impaneled for the purpose of determining a number of cases that have been scheduled for jury consideration, some of which have been set here today. Consequently, I cannot conscientiously, in carrying out my duty, proceed further with calling a jury to try cases with a case pending in the court on a motion to declare the jury illegal and I think, as you gentlemen well know, that the burden of proof is on the petitioners who come with a motion at this time to quash a jury.

"As a matter of fact, the motion was made in connection with the jury that was to be impaneled in the June session of 1966 and it was not developed and if it were not for the fact that you direct your motion to the list from which the Grand Jury and the Petit Jury are drawn, well then you would not have anything in this proceeding at all. But, in view of the fact that a jury is coming up again for this session which will be impaneled here on the 12th of this month—I mean the 12th of June, then of course it is necessary for this Court to proceed with the business. I just cannot continue and continue the matter. So, if you decline to proceed with any further inquiry into this matter under the cir-

der the court's supervision might have produced names of recent "key men" used to obtain the present jury. These key men could have reviewed the lists and stated the approximate ratio of White and Negro citizens suggested. Plaintiff's counsel admitted that the jury lists themselves would be of little help without a much longer delay and ex parte investigation. The trial court made clear his concern for the orderly trial of his docket.

■ Under the above circumstances of plaintiff's refusal to follow orderly discovery under the court's supervision, but more particularly his long delay and neglect to pursue available further discovery, it would strain credibility to say that the court abused his discretion in his ruling denying access to the jury list. Apropos to this situation is Circuit Judge Bastian's observation in Chung Wing Ping v. Kennedy, 111 U.S. App.D.C. 106, 294 F.2d 735, 737 (D.C. Cir. 1961):

> "Diligent prosecution of a cause of action which is dependent for success upon discovery demands that the plaintiff seek discovery in preparation of his case and not as a backdoor defense to a test of the merits of his claim."

See also Wray M. Scott Co. v. Daigle, 309 F.2d 105 (8 Cir. 1962). There can be no claim in this case that the court's limitation of discovery was "highly technical" or upon "wholly indefensible grounds." See First National Bank v. Cities Service Co., 391 U.S. 253, 88 S.Ct. 1575, 20 L.Ed.2d 569 (J. Black dissenting) (1968). We cannot accept the argument, asserted for the first time one year after discovery was permitted, that the court has arbitrarily denied the plaintiff the right to discover the only source of evidence available to prove his claim. We realize we deal in a sensitive area of litigation and with sensitive constitutional rights. Yet, we must stand behind a trial judge who fairly and openly permits discovery

rights for one year before trial, and who then offers, notwithstanding the lack of diligence by counsel, a further opportunity for oral examination in his presence of the pertinent court officials. Justice would be denied if we did not.

■ We have discussed the "key man" jury system in recent cases. Although the system can be abused, it is not impermissible per se. Hansen v. United States, 393 F.2d 763 (8 Cir., filed April 25, 1968); Pope v. United States, 372 F.2d 710, 723 (8 Cir. 1967); Mobley v. United States, 379 F.2d 768 (5 Cir. 1967). Plaintiff must sustain his burden of proof that there has been a deliberate and systematic discrimination. Tarrance v. State of Florida, 188 U.S. 519, 520, 23 S.Ct. 402, 47 L.Ed. 572 (1903); Akins v. State of Texas, 325 U.S. 398, 400, 65 S.Ct. 1276, 89 L.Ed. 1692 (1945). The burden is not a light one. Swain v. State of Alabama, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965); Akins v. State of Texas, supra. Here there certainly cannot be a prima facie charge based upon past discrimination (cf. Whitus v. State of Georgia, 385 U.S. 545, 87 S.Ct. 643, 17 L.Ed.2d 599 (1967); Bailey v. Henslee, 287 F.2d 936 (8 Cir. 1961)), or total exclusion (cf. Cassell v. State of Texas, 339 U.S. 282, 70 S.Ct. 629, 94 L.Ed. 839 (1950); Patton v. State of Mississippi, 332 U.S. 463, 68 S.Ct. 184, 92 L.Ed. 76 (1947); Coleman v. Alabama, 389 U.S. 22, 88 S.Ct. 2, 19 L.Ed.2d 22 (1967)) of the Negro race from the jury list. Every known evidential circumstance here points to the contrary; (1) on June 12, 1967, the jury that was chosen to try the case was composed of four Negroes and eight Whites; (2) the panel of 44 jurors who reported for jury duty on June 12, 1967, had 18 Negroes on it; and (3) thirty-seven per cent of the 60 jurors drawn by the Clerk and Jury Commissioner for the term in which the above captioned case was tried were Negroes.

Judgment affirmed.

cumstances with either the Clerk or the Jury Commission, both of whom are

available, then the Court has no alternative except to act on the motion."