John Dale HENSON, Appellant,

v.

Donald WYRICK, Warden, Missouri State Penitentiary, Appellee.

No. 79–1808.

United States Court of Appeals, Eighth Circuit.

Submitted April 29, 1980.

Decided Nov. 12, 1980.

Cynthia S. Holmes, St. Louis, Mo., for appellant.

John Ashcroft, Atty. Gen., Michael Elbein, Asst. Atty. Gen., Jefferson City, Mo., for appellee.

Before LAY, Chief Judge, STEPHEN-SON, Circuit Judge, and THOMAS,* Senior District Judge.

LAY, Chief Judge.

John Dale Henson is a Missouri state prisoner serving a sentence of 35 years for conviction, in Circuit Court of Butler County, Missouri, of second–degree murder. Henson claimed the homicide was in self defense or an accident. His petition for a writ of habeas corpus contends, among other things, that the jury selection process used in his trial violated the due process and equal protection clauses of the fourteenth amendment.

Petitioner contends the sheriff or his deputies selected bystander jurors for his trial upon order of the court pursuant to Mo. Rev.Stat. § 494.250(2). Petitioner contends that two of the sheriff's deputies investigated the homicide and testified at trial. In the evidentiary proceeding before the magistrate, the sheriff testified that to select bystander jurors he would go through the phone book or a list prepared by his office and, knowing the people in the county, select "regular citizens [and] high standard people to be jurors." The sheriff admitted that he would sometimes select jurors without relying on the phone book by calling people he thought would be available. Other times the sheriff would select standby jurors from local banks or businesses. The sheriff generally knew all the people he called. He made a conscious effort to select "solid citizens" and persons whom jury service would not inconvenience, e. g., retired persons or, in the winter, farmers. The sheriff's office deputy, who aided in the selection of standby jurors, stated: "We would serve no one that we didn't think would be reliable, dependable person to be a good juror."

The sheriff testified that he was not personally involved in the investigation of the crime for which Henson was convicted. The deputy sheriff who was primarily responsible for the investigation of the defendant's crime testified that he was not involved in selecting jurors or bystander jurors, serving subpoenas on jurors, or compiling the list of bystander jurors. The sheriff selected fourteen of his acquaintances to complete the venire panel for Henson's trial. Seven of the twelve petit jurors came from the sheriff's hand–picked list.

*Contemporaneous Objection.*

■ The state argues that the petitioner is precluded from raising an objection to the method of selection of bystander jurors under the contemporaneous objection requirement of *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). On direct appeal of Henson's conviction, the Missouri Court of Appeals affirmed the trial court's refusal to grant Henson's motion to quash the jury panel because the Court of Appeals found insufficient factual support for Henson's allegations about improper selection of bystander jurors. *State v. Henson*, 552 S.W.2d 378, 382 (Mo.App.1977). By reaching the issue of the sufficiency of the evidence, the Missouri court impliedly recognized that Henson preserved his objection at trial. The Missouri Attorney General's *Wainwright v. Sykes* objection seems anomalous in light of this finding by the highest court of Missouri that Henson had made an objection at trial. We agree with the findings by the United States Magistrate in *Henson v. Wyrick*, No. 78–970C(4) (E.D.Mo. April 20, 1979) and the district court, No. 78–970C(3) (E.D.Mo. September 6, 1979), that no Missouri procedural requirement prevents federal jurisdiction over the constitutional issue raised by Henson's petition.

*Denial of Due Process.*

■ The issue in this case is whether a sheriff whose subordinates investigated and arrested the defendant for a crime has violated the defendant's due process rights by hand–picking from among the sheriff's acquaintances the bystanders who became petit jurors. There appears to be no controlling Supreme Court or Eighth Circuit authority. The state argues that *Cravens*

* Daniel H. Thomas, Senior District Judge, Southern District of Alabama, sitting by designation.

v. United States, 62 F.2d 261 (8th Cir.), cert. denied, 289 U.S. 733, 53 S.Ct. 594, 77 L.Ed. 1481 (1933), authorizes a sheriff to hand–pick bystander jurors unless the sheriff was active in the investigation and prosecution of the defendant. Cravens does not involve a due process claim but involves rather the interpretation of when a marshal is "interested" in a prosecution within the meaning of a now repealed federal statute.[1] Id. at 271. Cravens held that federal district courts did not have to appoint a disinterested person to select bystander jurors, and could rely on the marshal to select such jurors, when the marshal was not "interested in the cause." Id.[2] In addition to involving different substantive law, Cravens is factually distinguishable from this case in two important respects. First, in Cravens, there was no indication that the marshal selected the bystander jurors from among his acquaintances. In this case, the sheriff hand–picked his acquaintances as jurors. Secondly, in Cravens, the marshal was found to have no "interest" in the case inasmuch as he had not been involved with the investigation, investigators, prosecution or prosecutors. In this case, however, the sheriff's subordinates were responsible for the investigation and arrest of the defendant. Because Cravens involved a federal statute and not the Constitution, these distinctions are not dispositive of the issue presented here. Nevertheless, this court's recognition in Cravens of the fundamental unfairness of an interested official hand–picking the bystander panel is the central concern in this case. See also Johnson v. United States, 247 F. 92 (9th Cir. 1917).

Judicial and Congressional Concern With Abuse of Discretion in Jury Selection.

The issue of the sheriff's hand–picking jurors came before this court in another Missouri state prisoner's habeas petition in Ross v. Wyrick, 581 F.2d 172 (8th Cir. 1978). In Ross, this court held the sheriff's personal selection of black persons for a venire panel in a criminal case did not cure the unconstitutional underrepresentation of blacks on the master jury list. Id. at 175. Although it is unclear whether Ross's holding was based on the defective master jury list, the sheriff's arbitrary selection, or both, id. at 175 n.8, there is no question that this court was concerned with the opportunity for the sheriff to abuse his or her discretion in selecting venire panel members. Id. at 174–75.

This court's statements in Ross about the potential for officers to abuse their discretion in selecting jurors echoed the long-standing concerns of other federal courts. Glasser v. United States, 315 U.S. 60, 85–86, 62 S.Ct. 457, 471–472, 86 L.Ed. 680 (1942) (dictum); Cravens v. United States, 62 F.2d 261, 271 (8th Cir. 1933) (dictum); Gideon v. United States, 52 F.2d 427, 429 (8th Cir. 1931) (clerk of court abused discretion by sending out a questionnaire to prospective jurors); United States v. Gordon, 253 F.2d 177, 184 (7th Cir. 1958) (dictum); United States v. Dennis, 183 F.2d 201, 220–21 (2d Cir. 1950) (dictum), aff'd, 341 U.S. 494, 71 S.Ct. 857, 95 L.Ed. 1137 (1951); Ippolito v. United States, 108 F.2d 668, 669–70 (6th Cir. 1940) (dictum); Johnson v. United

1. Act of Mar. 3, 1911, ch. 231, §§ 279–280, 36 Stat. 1165, 28 U.S.C. §§ 416–417 (Supp. VII 1933), as amended by Act of Jan. 31, 1929, ch. 126, 45 Stat. 1145, 28 U.S.C. § 417 (1934). Section 417 provided:

When, from challenges or otherwise, there is not a petit jury to determine any civil or criminal cause, the marshal or his deputy shall, by order of the court in which such defect of jurors happens, return jurymen from the bystanders sufficient to complete the panel; and when the marshal or his deputy is disqualified as aforesaid [see 28 U.S.C. § 416 (1934)], jurors may be so returned by such disinterested person as the court may

appoint, and such person shall be sworn, as provided in section 416 of this title.

These provisions have been replaced by Act of Mar. 27, 1968, P.L. 90–274, § 101, 82 Stat. 59, 28 U.S.C. § 1866(f), which is quite different from the earlier version.

2. Where a federal marshal was involved in the investigation or prosecution of someone, the marshal was disqualified from selecting the bystander jurors. In such a situation, 28 U.S.C. §§ 416–417 (1934) required appointment of a disinterested person to select bystander jurors in the marshal's stead. Johnson v. United States, 247 F. 92 (9th Cir. 1917); Cravens v. United States, 62 F.2d 261, 271 (8th Cir. 1933).

*States*, 247 F. 92 (9th Cir. 1917) (special officer should have been appointed to select bystander jurors where marshal was personally involved in the investigation of defendant); *Humes v. Robbins*, 128 F.Supp. 586 (D.Me.1955) (dictum). The Supreme Court described the potential dangers of excessive discretion in officials who select jurors in *Glasser*:

> And, its [the duty of selecting jurors] exercise must always accord with the fact that the proper functioning of the jury system, and, indeed, our democracy itself, requires that the jury be a "body truly representative of the community," and not the organ of any special group or class. If that requirement is observed, the officials charged with choosing federal jurors may exercise some discretion to the end that competent jurors may be called. But they must not allow the desire for competent jurors to lead them into selections which do not comport with the concept of the jury as a cross–section of the community. Tendencies, no matter how slight, toward the selection of jurors by any method other than a process which will insure a trial by a representative group are undermining processes weakening the institution of jury trial, and should be sturdily resisted. That the motives influencing such tendencies may be of the best must not blind us to the dangers of allowing any encroachment whatsoever on this essential right. Steps innocently taken may, one by one, lead to the irretrievable impairment of substantial liberties.

315 U.S. at 85–86, 62 S.Ct. at 471–472. *See also Murrah v. State*, 532 F.2d 105 (8th Cir. 1976).

Congressional concern for fundamental fairness in the method of selecting bystander jurors has caused federal selection methods to evolve from one of marshals selecting bystanders from persons present in court[3] to a method of random selection from specified lists in a manner ordered by the court.[4] This legislative change was prompted in large part by congressional desires to eliminate "subjective screening" of potential jurors. H.R.Rep. No. 1076, 90th Cong., 2d Sess., *reprinted in* [1968] U.S.Code Cong. & Ad.News, pp. 1792, 1794, 1797.

Furthermore, many state courts have also expressed concern over the unbridled discretion of officials in the selection of bystander jurors. *See State v. Olek*, 288 Minn. 235, 179 N.W.2d 320, 326 (1970) (after sheriff had picked two persons personally acquainted with him to complete a venire panel, the court ordered the sheriff to select eight others who were not acquainted with him from which the panel would be completed); *Howard v. State*, 103 Tex.Cr.R. 205, 280 S.W. 586, 587 (1926) (sheriff's picking jurors from lists supplied by railroad shop foremen was strongly condemned); *Hargo v. United States*, 1 Okl.Cr. 590, 98 P. 1021 (1909) (deputy marshal who excluded from list of bystanders all persons who admitted acquaintance with defense counsel acted improperly; conviction reversed); *Colwell v. Commonwealth*, 320 S.W.2d 116, 120 (Ky.1959) (court strongly condemned practice by court clerk of notifying her friends that jury service would be available when court instructed sheriff to select talesmen); *People v. Bedard*, 11 Ill.2d 622, 145 N.E.2d 54 (1957) (it was reversible error under an Illinois statute for the trial court to refuse to appoint a special bailiff to summon bystander jurors upon defendant's motion where the sheriff's office was interested in the case before the court); *Coy v. State*, 163 Tex.Cr.R. 58, 288 S.W.2d 782, 783–84 (1956) (it was reversible error under Texas statute for sheriff to hand–pick tales rather than to select them from the jury wheel where county by statute was required to use wheel to select venire panel).

*Prejudice to the Defendant.*

A number of state cases require the defendant to show actual prejudice before a conviction will be reversed on the grounds that the sheriff allegedly abused his or her discretion in the selection of bystander jur-

---

3. Act of Mar. 3, 1911, ch. 231, § 280, 36 Stat. 1165, 28 U.S.C. § 417 (1934).

4. Act of Mar. 27, 1968, P.L. 90–274, § 101, 82 Stat. 59, 28 U.S.C. § 1866(f).

ors. *See State v. Holt,* 592 S.W.2d 759, 767–68 (Mo.1980) (sheriff's hand–picking of jurors is permissible absent a showing of affirmative prejudice); *Smith v. State,* 241 Ark. 748, 410 S.W.2d 126 (1967) (it was not reversible error to allow sheriff who was a state's witness to hand–pick two jurors from a jury list absent a showing of actual prejudice to the defendant); *Taylor v. State,* 420 S.W.2d 601, 605 (Tex.Cr.App. 1967) (the sheriff's hand–picking of tales was not error); *State v. Shaw,* 284 N.C. 366, 200 S.E.2d 585, 587 (1973) (since defendant had an opportunity to examine the tales on voir dire, and alleges no violation of trust by the sheriff, the sheriff's summoning of additional jurors was not error); *State v. White,* 6 N.C.App. 425, 169 S.E.2d 895, 897 (1969) (in absence of proof that officer has violated the discretionary trust placed in him to select and summon tales, the officer should remain free to use his or her best judgment in carrying out the orders of the trial court); *State v. Sturdivant,* 31 N.J. 165, 155 A.2d 771, 774–75 (1959), *cert. denied,* 362 U.S. 956, 80 S.Ct. 873, 4 L.Ed.2d 873 (1960) (sheriff's exercise of discretion is authorized in selection of tales, but sheriff must not willingly select partial jurors or accept the suggestion of a litigant. Defendant must show affirmative prejudice to obtain reversal. *Id.* at 776).

In *Humes v. Robbins,* 128 F.Supp. 586 (E.D.Me.1955), the federal district court found no prejudice in a state trial where preliminary precautions were taken to insure that the sheriff's discretion to select bystander jurors was not abused. The sheriff who investigated the crime, arrested the defendant and served as a witness for the state, was nevertheless allowed to pick the bystanders for the jury. The district court observed:

> Humes told his counsel that he mistrusted the sheriff's disinterestedness in selecting talesmen and his counsel took the matter up with the court. The court thereupon called a conference in chambers with the prosecuting attorney, Humes' attorney, and the sheriff, at which the court ordered the sheriff not to tell the persons he ordered into court for service as tales-men anything about the case upon which they might be selected to sit, or to mention Humes' name in connection with it. It was also then agreed that Humes' counsel might interrogate each talesman as he was called for examination prior to selection as a juror. . . . Neither Humes nor his counsel made any further objections to the selection of talesmen by the sheriff.

128 F.Supp. at 588–89.

The constitutional defect in Henson's jury is that the sheriff hand–picked his acquaintances to complete the venire panel. That some jurors were acquaintances of the sheriff would not itself invalidate the conviction. *United States v. Carr,* 584 F.2d 612, 616 (2d Cir. 1978), *cert. denied,* 440 U.S. 935, 99 S.Ct. 1280, 59 L.Ed.2d 494 (1979); *United States v. Hurd,* 549 F.2d 118, 120 (9th Cir. 1977); *United States v. James,* 453 F.2d 27, 28 (9th Cir. 1971); *United States ex rel. Cooper v. Reincke,* 219 F.Supp. 733, 741 (D.Conn.1963), *aff'd,* 333 F.2d 608 (2d Cir.), *cert. denied,* 379 U.S. 909, 85 S.Ct. 205, 13 L.Ed.2d 181 (1964). Also, that the court allowed some discretion in the selection of jurors would not invalidate the conviction. *Townsend v. Ross,* 396 F.2d 573, 577 (8th Cir. 1968); *Beatrice Foods Co. v. United States,* 312 F.2d 29, 35 (8th Cir. 1963); *Cravens v. United States,* 62 F.2d at 270. In this case, however, the sheriff exercised his discretion to ensure that only his acquaintances would fill venire panel vacancies.

The potential for a conviction prone jury under such a system is substantial. Although perhaps not directly involved in the investigation of Henson's crime, the sheriff was the immediate supervisor of the deputies in charge of the case. Regardless whether the sheriff had spoken with his deputies about the case or had formed an opinion as to Henson's guilt before the trial, there is a great potential for the sheriff to hand–pick jurors sympathetic to the prosecution. Where, as here, the jurors are picked according to the sheriff's subjective rather than objective criteria, the opportunity for the sheriff to express his allegiance to the prosecution by selecting sympathetic

jurors is unlimited. *Cf. Turner v. Fouche*, 396 U.S. 346, 360, 90 S.Ct. 532, 540, 24 L.Ed.2d 567 (1970); *Singleton v. Estelle*, 492 F.2d 671, 678 (5th Cir. 1974). In such situations, there is considerable risk that the bystander jurors will mirror the sheriff's own biases.

■ In addition to the likely predisposition of his selections, a jury could easily associate the credibility of the sheriff with his deputy, who testified against Henson. It is true that Henson's trial counsel had the opportunity to show bias on voir dire and protect Henson from the potentially prejudicial selection methods of the sheriff. But where the potential of prejudice is so great we fail to see how an opportunity for counsel to conduct a voir dire can undo the harm already done. The subtleties involved

in identifying jurors' sympathies and predicting their evaluation of deputies' prospective testimony are often too intangible to identify during voir dire. When the potential prejudice is as great as it was here a showing of actual prejudice to the defendant is not necessary in order to warrant a new trial.[5]

We conclude that Henson was denied due process and a trial by a fair jury. A method employing random selection from a master jury list, appointing a special bailiff to select bystander jurors, or otherwise limiting the sheriff's discretion would require more time to select such jurors, but fundamental fairness to the defendant requires some method better designed to obtain an impartial jury than the sheriff hand–picking among his acquaintances.

---

**5.** In *Peters v. Kiff*, 407 U.S. 493, 92 S.Ct. 2163, 33 L.Ed.2d 83 (1972), the Supreme Court discussed the showing required of a defendant who alleged that a defect in his jury deprived him of due process. The Court stated:

> Moreover, even if there is no showing of actual bias in the tribunal, this Court has held that due process is denied by circumstances that create the likelihood or the appearance of bias. This rule, too, was well established long before the right to jury trial was made applicable to state trials, and does not depend on it. . . . As this Court said in *In re Murchison* [349 U.S. 133, 75 S.Ct. 623, 99 L.Ed. 942 (1955)], *supra*, "[f]airness of course requires an absence of actual bias in the trial of cases. But our system of law has always endeavored to prevent even the probability of unfairness." 349 U.S., at 136 [75 S.Ct., at 625].

> These principles compel the conclusion that a State cannot, consistent with due process, subject a defendant to indictment or trial by a jury that has been selected in an arbitrary and discriminatory manner, in violation of the Constitution and laws of the United States. Illegal and unconstitutional jury selection procedures cast doubt on the integrity of the whole judicial process. They create the appearance of bias in the decision of individual cases, and they increase the risk of actual bias as well.

*Id.* at 502–03, 92 S.Ct. at 2168.

The Court concluded:

> It is in the nature of the practices here challenged that proof of actual harm, or lack of harm, is virtually impossible to adduce. For there is no way to determine what jury would have been selected under a constitutionally valid selection system, or how that jury would have decided the case. Conse-

quently, it is necessary to decide on principle which side shall suffer the consequences of unavoidable uncertainty. See *Speiser v. Randall*, 357 U.S. 513, 525–526 [78 S.Ct. 1332, 1341–1342, 2 L.Ed.2d 1460] (1958); *In re Winship*, 397 U.S. 358, 370–373, 90 S.Ct. 1068, 1075–1077, 25 L.Ed.2d 368 (1970) (Harlan, J., concurring). In light of the great potential for harm latent in an unconstitutional jury–selection system, and the strong interest of the criminal defendant in avoiding that harm, any doubt should be resolved in favor of giving the opportunity for challenging the jury to too many defendants, rather than giving it to too few.

*Id.* at 504, 92 S.Ct. at 2169 (citations omitted).

In *Turner v. Louisiana*, 379 U.S. 466, 85 S.Ct. 546, 13 L.Ed.2d 424 (1965), the Supreme Court overturned a conviction by a jury which had been placed in the custody of two deputy sheriffs who were the prosecution's chief witnesses. *Id.* at 471–73, 85 S.Ct. at 548–50. The grounds for overturning that conviction were "the potentialities of what went on outside the courtroom" while the jury was with the deputies. *Id.* at 473, 85 S.Ct. at 550. In *Turner*, the court overturned the conviction because of the potential of an ex parte, extra–record communications with jurors by prosecution witnesses.

The Supreme Court has employed the vehicle of probability of prejudice to overturn other convictions as well. *See, e. g., Sheppard v. Maxwell*, 384 U.S. 333, 352–55, 86 S.Ct. 1507, 1516–18, 16 L.Ed.2d 600 (1966); *Estes v. Texas*, 381 U.S. 532, 544, 85 S.Ct. 1628, 1633, 14 L.Ed.2d 543 (1965); *Rideau v. Louisiana*, 373 U.S. 723, 727, 83 S.Ct. 1417, 1419, 10 L.Ed.2d 663 (1963).

We hold that the ends of justice and due process will be served if Henson is granted a new trial.

The denial of the petition for a writ of habeas corpus is ordered reversed; the district court is ordered to grant the writ of habeas corpus directing release of the petitioner unless the petitioner is granted a new trial within a reasonable time as to be determined by the district court.

It is so ordered.