Douglas W. THOMPSON, Appellant,

v.

Carl WHITE, Superintendent, Missouri Training Center for Men, Appellee.

No. 81–1092.

United States Court of Appeals, Eighth Circuit.

Submitted July 23, 1981.

Decided Oct. 14, 1981.

Douglas Wayne Thompson, pro se.

Richardson & Jianakoplos, Thomas Scott Richardson (argued), St. Louis, Mo., for appellant.

John Ashcroft, Atty. Gen., Steven W. Garrett (argued), Michael H. Finkelstein, Asst. Attys. Gen., Jefferson City, Mo., for appellee.

Before LAY, Chief Judge and STEPHENSON and McMILLIAN, Circuit Judges.

STEPHENSON, Circuit Judge.

Douglas W. Thompson, a Missouri state prisoner, appeals from the district court's [1] denial of his habeas corpus petition filed under 28 U.S.C. § 2254. He contends that he was denied a fair trial because of the jury selection technique used in his 1966 conviction by a Mississippi County, Missouri, court.[2] We reverse the judgment of the district court and remand for a new trial.

In 1961, Thompson was convicted and sentenced to death for the March 10, 1961, shooting death of a Cape Girardeau, Missouri, policeman.[3] After an unsuccessful direct appeal of his conviction, *State v. Thompson*, 363 S.W.2d 711 (Mo. En Banc 1963) (*Thompson I*), Thompson's family secured counsel and succeeded in obtaining a new trial through a rule 27.26, Mo.Rev.Stat. petition based on the state's suppression of material evidence. *State v. Thompson*, 396 S.W.2d 697 (Mo. En Banc 1965) (*Thompson II*).

A new trial was held in 1966, in Mississippi County, Missouri. Thompson was again convicted in December 1966, but this time was sentenced to a life term. There was no direct appeal of this conviction.

On September 10, 1975, Thompson filed for relief in the Missouri state court under rule 27.26, Mo.Rev.Stat. In this motion he alleged that (1) he was convicted on the basis of false and perjured testimony and the remaining evidence was not sufficient to sustain a conviction; (2) he was convicted in violation of double jeopardy; (3) the Mississippi County jury was unconstitutionally selected; (4) the jury was improperly

instructed on the law of the case; and (5) the trial court refused to provide him with a copy of the jury instructions.

The motion was denied on June 22, 1977, without a hearing. The Missouri Court of Appeals affirmed on all issues except that concerning the jury selection. This issue was remanded for an evidentiary hearing. *Thompson v. State*, 576 S.W.2d 541 (Mo. App.1978) (*Thompson III*).[4]

On October 21, 1977, before the state trial court had ruled on the remanded issue of jury selection, Thompson filed the instant petition for federal habeas relief. In it he renewed his claims concerning the use of perjured testimony, the lack of credible evidence, double jeopardy violations, and improper jury selection. The district court dismissed the petition for failure to exhaust state remedies. 442 F.Supp. 1269. Our court affirmed the dismissal of the jury selection claim for failure to exhaust, *Thompson v. White*, 591 F.2d 441, 443 (8th Cir. 1979), but reversed and remanded the other issues in light of the Missouri Court of Appeals opinion in *Thompson v. State, supra*, 576 S.W.2d 541, which was rendered after the federal district court's opinion and which dealt with those issues.

On February 26, 1979, Thompson filed an amended federal habeas petition restating his claim concerning the use of perjured testimony, lack of credible evidence and double jeopardy violations. On March 10, 1980, before the district court rendered an opinion on this petition, Thompson moved for removal of the jury selection issue from

1. The Honorable Edward L. Filippine, United States District Judge, Eastern District of Missouri.

2. Petitioner was paroled from the life sentence from which he now appeals. He was sent to California to serve a prior California sentence. California has since vacated his sentence and he is now free.

3. Sammy Tucker, a fellow defendant, was also convicted and sentenced to death for the death of another policeman arising out of the same incident. Tucker was executed.

4. The court ruled that defendant deliberately, voluntarily and knowledgeably bypassed his

right of direct appeal in order to avoid the possibility of the death penalty. The court ruled that this bypass disposed of Thompson's allegations of instructional error and of the failure to provide him with a copy of the instructions. The court ruled that because the allegation of the use of perjured testimony was identical to the allegation before the Missouri Supreme Court in 1965, it was precluded by that ruling. The court held the claim of insufficient evidence was not cognizable in a rule 27.26 proceeding. The court overruled the double jeopardy claim on the basis of the trial record.

the state court to the federal district court on the grounds that the state had deliberately stalled and delayed the progress of the case. Thompson argued that it was no longer necessary to pursue a remedy in the state court because of this stalling and delay in light of our holding in *Mucie v. Missouri State Department of Corrections*, 543 F.2d 633 (8th Cir. 1976).

On October 14, 1980, the parties filed a stipulation in the federal habeas action now before us stating that the sheriff of Mississippi County would testify that he personally selected the jury panel. The stipulation stated that in December 1966, the Mississippi County circuit judge issued a special venire facias directing Sheriff Simmons to summon approximately seventy-two citizens for jury service on December 20, 1966, for the trial of Thompson. Sheriff Simmons personally selected potential jurors on the basis of people he knew whom "he thought would make good jurors," would answer the voir dire examination "truthfully" and were at least twenty-one years old with no criminal convictions. Simmons also knew that the defendant was charged with the murder of a police officer. The stipulation recited the fact that Simmons would testify he chose approximately seven blacks as prospective jurors.

As previously indicated, petitioner was found guilty by the jury and received the sentence of life imprisonment attacked in these proceedings.

The district court, after considering the magistrate's report and recommendation, dismissed all the claims for relief. The court dismissed the jury claim on the grounds that a prima facie case of discrimination was not established by proof that the court failed to use a random jury selection procedure. The court held that a prima facie case is established only when a lack of a random jury selection exists in conjunction with an indication of actual discrimination through exclusion of an identifiable group. The court also dismissed the claim on the grounds that the underrepresentation of blacks was not sufficient to establish a prima facie case of discrimination.

The sole issue before us is whether the district court erred in its dismissal of the jury selection issue.

The state argues that we are precluded from reviewing the jury selection claim because of Thompson's failure to object at the time of his trial. Thompson responds that he was unaware of the standards concerning the selection of jurors because, at that time, the cases enunciating the standards had not yet been decided. Also, Thompson claims that it was unknown to all the parties that the sheriff had deviated from the statutory random selection procedure.[5] In fact, it was not until counsel was appointed by the federal district court in the instant case that the parties discovered the problem and entered into the stipulation which reveals that the entire jury panel was selected by the sheriff.

The bar of a state contemporaneous rule is not absolute. Under the rule enunciated by the Supreme Court, such a bar can be lifted if adequate cause for the failure to object exists and prejudice to the defendant can be shown. *Wainwright v. Sykes*, 433 U.S. 72, 80–91, 97 S.Ct. 2497, 2503–2508, 53 L.Ed.2d 594 (1977); *Francis v. Henderson*, 425 U.S. 536, 542, 96 S.Ct. 1708, 1711, 48 L.Ed.2d 149 (1976).

In the present case both factors are satisfied. In light of the fact that Thompson did not know nor had reason to suspect that the statutory procedure was

---

5. The Missouri code outlines the procedure for the selection of juries. It states that the clerk of the circuit court and the judges of the county court constitute a board of jury commissioners for designated counties. Mo.Rev.Stat. § 494.-230. The board selects four hundred names of qualified persons. The names of these persons are put on separate slips of paper and "placed in a box with a sliding lid * * * and thoroughly mixed." *Id.* at section 494.240.

The code then calls for the clerk of the board "so situated as to be unable to see the names on such slips" to publicly draw the names of the jurors. *Id.* at section 494.250. If a jury is discharged and it is necessary to have another jury during that term, the court may order the sheriff to summon qualified citizens to serve as the jury panel from which a jury may be selected. *Id.* at section 494.240.

not being followed, he certainly had "cause" not to object. We also recognize that the "grizzly choice" between life imprisonment and execution facing Thompson provided him with an additional incentive not to appeal. *See Fay v. Noia,* 372 U.S. 391, 439–40, 83 S.Ct. 822, 849–850, 9 L.Ed.2d 837 (1963). As will be discussed at length later in the opinion, we also find that prejudice existed because the sheriff personally selected the veniremen for the trial of an individual accused of killing another law enforcement officer.[6]

Turning to the issue of whether the jury selection entitled the defendant to re-

lief, we are faced with two recent opinions of our court on this subject. In *Henson v. Wyrick,* 634 F.2d 1080 (8th Cir. 1980), *cert. denied,* 450 U.S. 958, 101 S.Ct. 1417, 67 L.Ed.2d 383 (1981), we held there was prejudice where the sheriff who was in charge of the investigation which led to the arrest of the defendant selected the jurors to fill vacancies on the panel. *Henson* provided an excellent discussion of the policies that bore on our decision to find undue prejudice.[7]

Subsequent to *Henson,* in *Holt v. Wyrick,* 649 F.2d 543, 546 (8th Cir. 1981), we found

---

**6.** We recognize that the state trial court has not yet dealt with the jury selection question which we refused to consider in 1979, on the basis that Thompson had not exhausted his state remedies. *Thompson v. White,* 591 F.2d 441, 443 (8th Cir. 1979). We hold that exhaustion no longer calls for our abstention. Exhaustion is a rule of comity. *Fay v. Noia,* 372 U.S. 391, 415–26, 83 S.Ct. 822, 836–842, 9 L.Ed.2d 837 (1963). All that we require is that a state be given "one full and fair opportunity to decide a question * * *." *Eaton v. Wyrick,* 528 F.2d 477, 480 (8th Cir. 1975). We do not require a petitioner to pursue relief by filing repetitious or futile applications, *Rodgers v. Wyrick,* 621 F.2d 921, 924 (8th Cir. 1980), or where the state has unduly delayed the proceedings. *Mucie v. Missouri State Dept. of Corrections,* 543 F.2d 633, 635–36 (8th Cir. 1976).

In light of the delays by the state, ample opportunity has been afforded the state to deal with this case and we see no reason to continue to force defendant to pursue a remedy in state court. *Id. See Thompson v. White, supra,* 591 F.2d at 443.

**7.** In *Henson* we held:

This court's statements in *Ross* [*Ross v. Wyrick,* 581 F.2d 172 (8th Cir. 1978)] about the potential for officers to abuse their discretion in selecting jurors echoed the long-standing concerns of other federal courts.

\* \* \* \* \* \*

Congressional concern for fundamental fairness in the method of selecting bystander jurors has caused federal selection methods to evolve from one of marshals selecting bystanders from persons present in the court to a method of random selection from specified lists in a manner ordered by the court. This legislative change was prompted in large part by congressional desires to eliminate "subjective screening" of potential jurors.

Furthermore, many state courts have also expressed concern over the unbridled discre-

tion of officials in the selection of bystander jurors.

*Henson v. Wyrick,* 634 F.2d 1080, 1082-83 (8th Cir. 1980), *cert. denied,* 450 U.S. 958, 101 S.Ct. 1417, 67 L.Ed.2d 383 (1981) (citations and footnotes omitted).

We concluded:

The constitutional defect in Henson's jury is that the sheriff hand-picked his acquaintances to complete the venire panel. That some jurors were acquaintances of the sheriff would not itself invalidate the conviction. Also, that the court allowed some discretion in the selection of jurors would not invalidate the conviction. In this case, however, the sheriff exercised his discretion to ensure that only his acquaintances would fill venire panel vacancies.

The potential for a conviction prone jury under such a system is substantial. Although perhaps not directly involved in the investigation of Henson's crime, the sheriff was the immediate supervisor of the deputies in charge of the case. Regardless whether the sheriff had spoken with his deputies about the case or had formed an opinion as to Henson's guilt before the trial, there is a great potential for the sheriff to hand-pick jurors sympathetic to the prosecution. Where, as here, the jurors are picked according to the sheriff's subjective rather than objective criteria, the opportunity for the sheriff to express his allegiance to the prosecution by selecting sympathetic jurors is unlimited. In such situations, there is considerable risk that the bystander jurors will mirror the sheriff's own biases.

\* \* \* \* \* \*

We conclude that Henson was denied due process and a trial by a fair jury.

\* \* \* \* \* \*

[F]undamental fairness to the defendant requires some method better designed to obtain an impartial jury than the sheriff hand-picking among his acquaintances.

*Id.* at 1084–85 (citations omitted).

that the selection of supplemental jurors by a sheriff in a neighboring county was not prejudicial. We distinguished *Henson* on the grounds that the sheriff who conducted the investigation did not choose the jurors.[8]

Our present case is much closer to *Henson* than *Holt*. While we have a sheriff, other than the one who investigated the shooting, selecting the jurors, we have two other extremely prejudicial factors. First, the victim of the shooting was a law enforcement officer. The sympathy that the sheriff would feel for a fellow officer and his family would provide "great potential for the sheriff to hand-pick jurors sympathetic to the prosecution." *See Henson v. Wyrick, supra,* 634 F.2d at 1084. Second, the sheriff selected the entire jury panel. Unlike *Henson* or *Holt* which involved the selection of supplemental jurors, we are faced with the possibility that the entire panel would be unduly "sympathetic to the prosecution." As in *Henson,* the danger of a "conviction-prone" jury in such a situation is simply too great. The prejudice that exists in this case requires a vacation of Thompson's conviction.

We see no need to consider Thompson's other alleged bases for a new trial.

We reverse the denial of the petition for writ of habeas corpus. The conviction should be vacated and we remand for further proceedings consistent with this opinion.

---

8. We held in *Holt*:

   This court's decision in *Henson v. Wyrick, supra,* likewise does not require reversal. In that case, the sheriff, whose subordinates investigated the crime and made the arrest, hand-picked the additional jurors from among his acquaintances. We granted habeas corpus relief because there existed the danger of a "conviction-prone" jury because of the "great potential for the sheriff to hand-pick jurors sympathetic to the prosecution."

   In this case, however, the facts differ significantly from those in *Henson.* First, the sheriff's office in neighboring Pemiscot Coun-

ty, rather than the New Madrid County sheriff's office, conducted the investigation. * * * Equally important, *Holt* presented no evidence that the sheriff selected only his acquaintances for the jury.

   Although we express concern with the fundamental fairness in this method of selecting bystander jurors, the record in this case discloses no basis for inferring a deprivation of due process. Accordingly, we reject *Holt*'s contention.

*Holt v. Wyrick,* 649 F.2d 543, 546 (8th Cir. 1981).