**James RUSSELL, Appellant,**

v.

**Donald WYRICK, Appellee.**

No. 83–2002.

United States Court of Appeals, Eighth Circuit.

Submitted March 12, 1984.

Decided June 11, 1984.

Rehearing and Rehearing En Banc Denied July 16, 1984.

James F. Sanders, St. Louis, Mo., for appellant.

John Ashcroft, Atty. Gen., George Cox, Asst. Atty. Gen., Jefferson City, Mo., for appellee.

Before HEANEY, Circuit Judge, FLOYD R. GIBSON and HENLEY, Senior Circuit Judges.

HENLEY, Senior Circuit Judge.

James Russell was convicted of having committed rape and sodomy on a female victim in a storeroom adjacent to an after-hours drinking establishment in Poplar Bluff, Missouri. After exhausting his state remedies, he filed a petition for habeas corpus in federal district court. His primary allegation is that the sheriff selected a significant number of the people on the jury panel in violation of his due process rights. *Henson v. Wyrick,* 634 F.2d 1080 (8th Cir.1980), *cert. denied,* 450 U.S. 958, 101 S.Ct. 1417, 67 L.Ed.2d 383 (1981). The district court[1] denied relief, 566 F.Supp. 1075, and Russell appeals.

Missouri law requires the Jury Commission to call citizens to be jurors. If absences and excuses for cause reduce the list of jurors to less than twenty-four, the sheriff on order of the court is authorized to "summon petit jurors ... from the bystanders." Mo.Rev.Stat. § 494.250 (1978). This court has held that this statute is not unconstitutional on its face. *See Henson,* 634 F.2d at 1084. However, we have vacated several convictions because the statute has been implemented in ways which violate defendants' due process rights to an impartial jury. *Anderson v. Frey,* 715 F.2d 1304 (8th Cir.1983), *cert. denied,* — U.S. —, 104 S.Ct. 739, 79 L.Ed.2d 198 (1984); *Thompson v. White,* 661 F.2d 103 (8th Cir. 1981), *vacated,* 456 U.S. 941, 102 S.Ct. 2003, 72 L.Ed.2d 463 (1982), *on remand,* 680 F.2d 1173 (8th Cir.1982); *Henson,* 634 F.2d at 1085.

The dangers from sheriff selection of jurors are several. The sheriff may choose jurors whom he believes are likely to vote in favor of the prosecution. The likelihood of this is heightened if the sheriff or his deputies investigated the case or if the sheriff chooses only people he knows. Another danger is the chance that a juror so selected may associate the credibility of the sheriff with that of any deputy who testifies at the trial. *Henson,* 634 F.2d at 1085. As we noted in *Anderson,* the central concern is with "the fundamental unfairness of an interested official's selecting the bystander jurors." 715 F.2d at 1308.

In this case, the Butler County sheriff's office had nothing to do with the investigation of the crime for which Russell was tried. The district court, after an evidentiary hearing, found that the crime had been investigated by Poplar Bluff, Missouri city police officers. Nor was the sheriff or a deputy called to testify on behalf of the prosecution. Not all the bystander jurors were acquaintances of the sheriff. Bystander jurors were selected by a deputy sheriff from a list kept in the sheriff's office. The list contained the names of some twenty-five people known to be generally available for jury duty at short notice. Some names had been provided by the sheriff, some by the deputies, and some by the circuit clerk.

Russell contends that the fact that the same list was used over and over enhances the possibility that the jurors from the list would be conviction-prone, since those jurors presumably enjoy serving on juries and are dependent on the sheriff and his deputies for this pleasure. Further, the fact that many jurors are "repeaters" gives the sheriff information concerning the jurors'

---

1. The Honorable Clyde S. Cahill, United States District Judge, Eastern District of Missouri.

propensity to convict or acquit. Finally, Russell argues that the fact that the sheriff's office did not investigate his case is not fatal, since, according to *Anderson,* this does not assure that the sheriff will pick neutral bystander jurors; sheriffs, *Anderson* noted, have an "institutional interest" in favor of conviction. 715 F.2d at 1308–09.

Russell's arguments carry great force in the abstract. The system used in Butler County raises many questions about its fairness, and it strikes us as a system ripe for abuse. However, in this case, the district court made explicit findings which seem to establish that the system worked fairly for Mr. Russell. The district court found that the sheriff's office had no connection with the investigation of the crime. Further, the deputy who actually selected the bystanders in Russell's case "was familiar with the names of a few of the special veniremen but of the few that he knew only one was summoned for jury duty for Russell's criminal trial." Finally, no one from the sheriff's office testified for the prosecution.

Prejudice to the defendant can be presumed when the sheriff or his agents select bystander jurors with whom they are acquainted for cases which they have investigated. *Henson,* 634 F.2d at 1085. In this case, unlike *Anderson,* the sheriff's office did not investigate the crime for which Russell was charged. Nor were there any peculiar circumstances present which demonstrated a heightened interest by the sheriff's office in the case. *Cf. Thompson,* 661 F.2d at 107 (fact that crime for which defendant was tried was murder of law enforcement officer made sheriff an interested party, despite the fact that sheriff did not investigate the crime). The district court expressly found that the deputy in charge of bystander selection knew only one of the bystanders actually chosen. Despite the potential for unfairness inherent in Butler County's system, we are unable to conclude that this potential manifested itself at Russell's trial. Rather, it appears that Russell's jury was fairly selected. *Holt v. Wyrick,* 649 F.2d 543, 546 (8th Cir.1981), *cert. denied,* 454 U.S. 1143, 102 S.Ct. 1002, 71 L.Ed.2d 295 (1982) (sheriff who selected bystanders did not investigate the crime and did not select only acquaintances; writ denied).

The court in *Anderson* noted that it was "the participation of an interested official" which was unfair in *Anderson.* While we agree with *Anderson* that the sheriff may have an "institutional interest" in seeing defendants convicted, we are unwilling to conclude that that institutional interest alone is enough to deprive a defendant of his due process rights. Were that the case, *Holt* would have been decided the other way.[2]

The judgment of the district court is affirmed.

HEANEY, Circuit Judge, dissenting.

It appears from the record that some of the persons on the bystander list used in this case were selected because they were acquaintances of the sheriff and others in his office. Others were placed on the list by the circuit clerk. We do not know if any of those listed because of their acquaintance with persons in the sheriff's office served on the petit jury which convicted Russell. If so, I would reverse the district court because of the fundamental unfairness in allowing the sheriff and his subordinates to hand-pick acquaintances for jury service; if not, Russell would not be prejudiced from this defect in the system and I would affirm. For purposes of this appeal, I would remand for further factual findings on this crucial issue.

In *Henson,* we held that a sheriff's selection of bystander jurors based on acquaintance violated the due process clause. *Henson v. Wyrick, supra,* 634 F.2d at 1084. We made clear that the sheriff's involvement in the selection of bystander

---

**2.** While this court has not yet held that the Missouri system of bystander selection by sheriffs is unconstitutional per se, the perils encountered in cases like *Anderson, Henson, Holt* and *Thompson* suggest that Missouri may wish to consider some modification of its system.

jurors in itself was not constitutionally infirm, but that such involvement should be limited to an application of totally objective criteria, such as random selection from a voters' registration list. *Id.* at 1084–1085. We reiterated these precepts in our recent *Anderson* opinion. *Anderson v. Frey, supra,* 715 F.2d at 1309. We emphasized in *Anderson* that the sheriff's mere involvement in the process or mere acquaintance with prospective jurors is not the problem; rather, the nature of that involvement is the key. *Id.* at 1309 & n. 7. In my view, when personal acquaintance with law enforcement personnel is the *reason* for placing a name on a bystander jury list, the potential for selecting a conviction-prone jury from that list rises to the level of fundamental unfairness. We ignore human nature to suppose that a sheriff or deputy would suggest the name of an acquaintance known to sympathize with the rights of the accused.

I would not read *Holt* to permit a sheriff and her or his subordinates to select prospective jurors on the basis of personal acquaintance so long as those officials are not directly involved in the case at hand. As I view *Holt,* the use of another sheriff's office to select additional jurors would have been improper were it not for the "[e]qually important" factor that the defendant in that case "presented no evidence that the sheriff selected only his acquaintances for the jury." *Holt v. Wyrick, supra,* 649 F.2d at 546. In this case, Russell adduced evidence that at least some of the persons on the bystander jury list were selected *because of* their acquaintance with the sheriff or his deputies. Even if *Holt* could be interpreted to support the majority's views under these circumstances, the most recent approach of this Court is expressed in *Anderson.* Under *Anderson,* "the participation of an interested official in the juror selection process" which takes the form of a subjective choice by such official is a violation of due process. *Anderson v. Frey, supra,* 715 F.2d at 1309.

For these reasons, I would remand for further factual findings and I respectfully dissent from the opinion of the majority.