# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs October 3, 2006

## STATE OF TENNESSEE v. LINDA KAY BATTS

**Direct Appeal from the Circuit Court for Weakley County**
**No. CR44-2005     William B. Acree, Jr., Judge**

---

**No. W2006-00419-CCA-R3-CD  - Filed April 4, 2007**

---

Following a jury trial, Defendant, Linda Batts, was convicted of possession of methamphetamine with intent to deliver and possession of drug paraphernalia. She was sentenced to serve eight years in the Department of Correction for the intent to deliver conviction, and eleven months, twenty-nine days in the county jail for the paraphernalia conviction, with the sentences to be served concurrently, for a total effective sentence of eight years. Defendant now appeals the judgments of the trial court arguing (1) the trial judge failed to exercise his duty to act as thirteenth juror and overturn the jury's verdict, (2) the jury selection process was tainted in violation of her constitutional rights; and (3) the trial court improperly denied her motion to suppress evidence. After a thorough review of the record, the judgments of the trial court are affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which DAVID G. HAYES and ROBERT W. WEDEMEYER, JJ., joined.

Steven L. West, McKenzie, Tennessee, for the appellant, Linda Kay Batts.

Robert E. Cooper, Jr., Attorney General and Reporter; David H. Findley, Assistant Attorney General; Thomas A. Thomas, District Attorney General; and Kevin D. McAlpin, Assistant District Attorney General, attorneys for the appellee, State of Tennessee

## OPINION

### I. Background

On April 21, 2005, Randal McGowan, a criminal investigator with the Weakley County Sheriff's Department, along with three other officers, conducted a search of Defendant's residence located at 2040 Highway 54, Weakley County. The search was conducted pursuant to a search warrant. Defendant and her co-defendant, James Voss, were present at the time of the search. During the period of surveillance preceding the search, Officer McGowan never observed Mr. Voss

at Defendant's residence. Officer McGowan testified that he was surprised to find Mr. Voss in the residence when the search was conducted.

The search of the residence yielded both drugs and drug paraphernalia. The officers recovered two bags of white powder, two sets of digital scales containing white residue, two spoons also containing white residue, three glass pipes, and approximately fifteen "corner cut bags" contained in a larger ziploc bag, from the bedroom occupied by Mr. Voss. The door to Mr. Voss' room was not locked at the time the search was conducted. The methamphetamine was found in the front pocket of a military-style shirt with the name "Melton" on the pocket. The shirt was discovered in a dresser drawer in the closet in Mr. Voss's bedroom. A balancing scale was found in the master bedroom along with two glass pipes and a transmitter detector. Officer Plunk explained that the detector was used to detect the presence of transmitters, such as wire taps, worn by undercover informants. A subsequent test conducted by the officers revealed that the transmitter detector did, in fact, successfully reveal the presence of a wire tap. An additional glass pipe and spoon were found in the kitchen.

The white powder field-tested positive for methamphetamine as did the white residue contained on the scales. Agent Dana Rose, a forensic investigator with the Tennessee Bureau of Investigation, testified that the white powder tested positive for methamphetamine in the laboratory and weighed one point seven (1.7) grams. Officer Marty Plunk, one of the investigating officers, testified that 1.7 grams of methamphetamine had a street value of approximately $180.00. Officer Plunk further testified that in his experience, digital scales, such as those taken from the scene, were typically used by drug dealers weighing drugs for resale although users were occasionally found in possession of such scales. Officer Plunk stated that the corner cut bags were also of the type typically used to package drugs for resale. He also said that glass pipes, like those recovered from the residence, were used in the consumption of methamphetamine.

In addition to the drugs and drug paraphernalia, Officer Candace Floyd, another investigating officer, recovered $1700.00 from the back pocket of the shorts Defendant was wearing during the search. A certified drug dog later alerted to the fact that the money smelled like methamphetamine. Clay Anderson, an investigator from the Dresden police department, testified that the dog's alert indicated that within the last twenty-four hours, the money had been exposed to methamphetamine through smoking the drug in the presence of the money, by someone touching the methamphetamine and then touching the money, or through direct contact.

Mr. Voss testified that he was a carpenter by trade and that he frequently traveled out of town for work. He explained that he and Defendant were friends, and he kept a bedroom at Defendant's residence where he stayed when he was working in town. Mr. Voss said that he left the bedroom door unlocked when he was away, and the door was unlocked at the time of the search. Mr. Voss denied that the drugs belonged to him. He likewise denied ownership of the scales, the transmitter detector, the ziploc bags, and the remaining drug paraphernalia. With respect to the money found on Defendant's person, Mr. Voss testified that Defendant told him she had received insurance money

from her father. Defendant's mother also testified that Defendant's father had recently given Defendant $1400.00 in insurance money.

## II. Analysis

Defendant raises three issues on appeal: (1) whether the trial court erred in failing to act as thirteenth juror and overturn the jury's verdict; (2) whether her right to a jury trial was violated by the trial court's use of bystanders as jurors; and (3) whether the trial court properly denied Defendant's motion to suppress the evidence recovered as a result of the search of her home.

### A. Thirteenth Juror Rule

In her brief, Defendant identifies her first argument as a challenge to the sufficiency of the evidence to support her conviction for possession of methamphetamine with intent to deliver. The substance of her argument, however, pertains to the trial judge's failure to fulfill his duty as thirteenth juror. Specifically, she argues that the trial judge, acting as thirteenth juror, should have overturned her conviction because the testimony of the investigating officers, her co-defendant, and her mother, cast reasonable doubt that she was in possession of methamphetamine with intent to deliver.

In *State v. Moats*, 906 S.W.2d 431, 434-35 (Tenn. 1995), our supreme court explained the reasoning for the thirteenth juror rule as follows:

> The purpose of the thirteenth juror rule is to be a "safeguard . . . against a miscarriage of justice by the jury." *State v. Johnson*, 692 S.W.2d 412, 415 (Tenn. 1985) (Drowota, J., dissenting). Immediately after the trial, the trial court judge is in the same position as the jury to evaluate the credibility of witnesses and assess the weight of the evidence, based upon the live trial proceedings. Indeed, this Court has recognized that "the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court." *Bolin v. State*, 219 Tenn. 4, 11, 405 S.W.2d 768, 771 (1966).

Tennessee Rule of Criminal Procedure 33(f) imposes a mandatory duty on the trial judge to serve as the thirteenth juror in every criminal case. *State v. Carter*, 896 S.W.2d 119, 122 (Tenn. 1995). Rule 33(f) does not require the trial judge to make an explicit statement on the record. Instead, when the trial judge simply overrules a motion for new trial, an appellate court may presume that the trial judge has served as the thirteenth juror and approved the jury's verdict." *Id*. Only if the record contains statements by the trial judge indicating disagreement with the jury's verdict or evidencing the trial judge's refusal to act as the thirteenth juror, may an appellate court reverse the trial court's judgment. *Id*. Otherwise, appellate review is limited to sufficiency of the evidence pursuant to Rule 13(e) of the Rules of Appellate Procedure. *State v. Burlison*, 868 S.W.2d 713, 718-

19 (Tenn. Crim. App. 1993). If the reviewing court finds that the trial judge has failed to fulfill his or her role as thirteenth juror, the reviewing court must grant a new trial. *Moats*, 906 S.W.2d at 435.

The proof at trial established that Defendant was the owner of the residence from which the drugs were recovered. Although her co-defendant occupied the bedroom where the drugs were found, he was frequently out of town, and the bedroom was left unattended and unlocked. Defendant had access to the bedroom at all times. As such, a trier of fact could conclude that Defendant had both the ability and the intention at any given time to exercise control over the methamphetamine which was located in a bedroom in her house.

The proof further established that the scales taken from Defendant's residence contained methamphetamine residue and were of the type typically used by drug dealers packing drugs for resale. The corner cut ziploc bags taken from the residence were also of the type used by drug dealers to package drugs for resale. The methamphetamine had a street value of $180.00. A functioning transmitter detector used to detect items such as police wire taps was recovered from Defendant's bedroom. Defendant was carrying $1700.00 in the back pocket of her shorts, and a certified drug dog alerted that the $1700.00 possessed an odor of methamphetamine indicating that the money had been exposed to methamphetamine in the twenty-four hours preceding Defendant's arrest.

At the conclusion of the hearing on the motion for new trial, the trial judge stated his findings on this issue as follows: "The Court has reviewed the evidence and the Court finds that the verdict of the jury is supported by the weight of evidence. And furthermore, sitting as the 13th juror, I expressly approve the verdict of the jury." The trial judge made no comments indicating his disapproval of the verdict or his refusal to act as thirteenth juror. To the contrary, the judge expressly stated his approval of the verdict and his willingness to fulfill his role as thirteenth juror. Based on the trial judge's comments, we must presume that the trial judge independently evaluated the physical evidence and the testimony of the witnesses at trial, weighed the credibility of that evidence as provided by Rule 33(f), and found no reason to overturn the jury's verdict. It is our determination that the trial judge properly acted as thirteenth juror. Accordingly, Defendant is not entitled to relief on this issue. We further note that even had Defendant properly challenged the sufficiency of the evidence to sustain her conviction, she would not be entitled to relief. Our review of the record supports a conclusion that the evidence was sufficient to sustain the conviction beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979).

### B. Bystander Juror Rule

In her next issue, Defendant argues that her constitutional right to a jury trial was violated as a result of the juror selection process employed by the trial court. Specifically, Defendant argues that bystander jurors should be objectively selected, and it was error for the deputies to subjectively summon bystanders to serve on the jury panel. She contends that the deputies subjectively chose the bystander jurors because they used their own discretion to excuse certain individuals from reporting to court rather than allowing the trial court to excuse the potential jurors.

-4-

Tennessee law provides for the trial court to obtain additional prospective jurors utilizing the bystander selection process. When a sufficient number of persons cannot be chosen from the venire, Tennessee Code Annotated section 22-2-308(a)(2) provides that "if the judge shall deem proper, [he may] furnish a sufficient number of names of [potential jurors] to be summoned to the sheriff, or the judge may, if the judge thinks proper, direct the sheriff to summon a sufficient number to complete the jur[y]." The trial judge may select the jurors from "citizens of the county or direct the sheriff to summon persons of the judge's selection whose names were not selected from the jury box." T.C.A. § 22-2-308(c)(2). Any person may be called to serve on the jury with the exception of those individuals who solicit to be summoned to the jury. T.C.A. § 22-2-308(c)(3).

In *Coury v. Livesay*, 868 F .2d 842 (6th Cir. 1989), the Sixth Circuit addressed the constitutionality of Tennessee's bystander jury statute. In that case, the jury venire was exhausted prior to empaneling sufficient jurors. *Id*., at 843. The trial judge ordered the sheriff to summon prospective jurors from the community. *Id*. The jurors were objectively chosen, not from an approved list, but by officers going from business to business and randomly and objectively summoning individuals to court. *Id*., at 845. Neither the investigating sheriff in the case nor his investigating officers participated in summoning the bystander jurors. The Sixth Circuit held that the bystander juror selection process used in *Coury* did not deprive the defendant of any constitutional rights. *Id*., at 845. In reaching its conclusion, the court conducted a historical review of bystander case law, after which it stated:

> The common thread running throughout these cases establishes that where the sheriff participates in the investigation and also selects bystander jurors based on subjective criteria, the defendant's right to a fundamentally fair trial is violated, [*Anderson v. Frey*, 715 F.2d 1304, 1309 (8th Cir. 1983); *Henson v. Wyrick*, 634 F.2d 1080, 1084-85 (8th Cir. 1980).], however, where the individual who selects the prospective jurors was not involved in investigating the case and uses objective criteria in selecting standby jurors, the process does not deprive the defendant of his constitutional rights. *See, e.g.*, [*Cody v. Solem*, 755, F.2d 1323, 1335 (8th Cir. 1985); *Russell v. Wyrick*, 736 F.2d 464 (8th Cir. 1984); *Holt v. Wyrick*, 649 F.2d 543, 546 (8th Cir. 1981).] We believe this rule sufficiently protects a defendant's right to a fair and impartial trial. . . . We believe a case-by-case analysis must be made to determine the extent of any actual prejudice caused by the manner in which additional jurors are obtained.

*Id.,* at 845; *see Gary William Holt v. State*, No. 03C01-9808-CR-00279, 2000 WL 66088, at *6 (Tenn. Crim. App., at Knoxville, Jan. 27, 2000), *perm. app. denied* (Tenn. Sept. 11, 2000) (holding that defendant's right to a jury trial was not violated where officers did not participate in the investigation, officers objectively selected jurors, and there was no evidence that bystander jurors had an interest in the case); *James B. Proctor v. State*, No. 01-C-019011CC00307, 1991 WL 136342, at *2 (Tenn. Crim. App., at Nashville, July 26, 1991), *perm. app. denied* (Tenn. Nov. 12, 1991) (holding defendant's right to a jury trial was not violated where county sheriff selecting bystander jurors made no effort to find individuals who were sympathetic to the prosecution, rather, he went to the public square and to a factory, found people who were shopping or working and told them

when to appear), *but see Oliphant v. State*, 153 Tenn. 130, 282 S.W. 206 (1926) (defendant's right to a jury trial was violated where sheriff and officers who summoned jurors had a financial interest in the outcome of the trial).

At the hearing on the motion for new trial, Officer Matheny, an officer with the Weakley County Sheriff's Department, testified that he was assigned to the courtroom on the day of Defendant's trial. He said that the trial judge sent him and Officer Hazelwood to recruit bystander jurors when the jury venire was exhausted. Officer Matheny began his search in the courthouse then went to Commerce Street and the bank. In a fifteen minute time span, Officer Matheny spoke with approximately twenty-five people. In his effort to summon jurors, Officer Matheny announced in the courthouse and at the solicited businesses that he needed people for jury duty and asked who was available. None of the potential jurors said that they would not come to court, however, some of the business owners could not send all of their employees without hardship. Officer Matheny did not summon any business owners who would be forced to completely close their business in order to come to court. He brought to court only those individuals who he could "grab" at the time. Seven of the people that Officer Matheny spoke with showed up in court to serve as jurors.

Officer Hazelwood was unavailable to testify at the hearing on the motion for new trial so the parties stipulated as to his testimony. The stipulation established that in seeking bystander jurors, Officer Hazelwood excused one of the potential jurors from coming to court because he was the only individual in the store and he would have been forced to lock the store in order to come. Officer Hazelwood brought three other potential jurors to court, one of whom was his father.

The trial court found as follows:

In count two [Defendant] contends that the jury selection process was not proper. In this case we ran out of jurors, there were a number of reasons for that, which I'm not going to go into. I think that's the first time that's happened since I've been on the bench.

But in any event, that because of that it was necessary that jurors be summoned by officers from the street or other places. And the officers did do that, several jurors were brought in.

These jurors were all subject to the voir dire examination by the attorneys. If my memory is correct, attorneys from both sides still had a number of [peremptory] challenges left, and this jury was completed from these people that were brought in.

The defendant contends, I guess, that when an officer ran into someone, that that person should have been required to come into the courtroom, and if the person had a reason such as a hardship from being excused, then the Court should have done that rather than the officers.

If I understand the testimony correctly, there was only perhaps one person that was excused because of the hardship. There were others who were not summoned because it appeared that it might create some hardship on the business by bringing them in.

Nevertheless, I don't see anything wrong with what the officers did. I guess the only other way it could have been done, if I went out - - accompanied the officer, and made sure the officer brought everybody he saw in, but I don't know how you'd do that. There was certainly nothing about the jurors that came in that would indicate that they were unfairly prejudiced toward the State or that there was any reason why they could not serve as jurors.

Again, counsel for the defendant had the opportunity to voir dire these potential jurors, and use the [peremptory] challenges or to challenge them because he thought it was appropriate.

The Court finds that this argument is without merit and is denied.

We agree with the trial court and conclude that Defendant's constitutional rights were not violated by the juror selection process. Defendant makes no allegation that the officers who summoned the jurors are the same who investigated her case, nor is there any evidence to support this conclusion. There is likewise no evidence to indicate that the officers had an interest in the outcome of the case. Defendant's sole argument is that the officers acted subjectively in excusing prospective jurors from reporting to court for jury duty where those individuals would suffer hardship. In our view, the officers' actions do not constitute subjective selection of potential jurors as contemplated by our case law. Furthermore, as noted by the trial court, Defendant had the opportunity but chose not to exercise his peremptory challenges to exclude any jurors whom he did not approve. "[O]nly where a defendant exhausts all of his peremptory challenges and is thereafter forced to accept an incompetent juror can a complaint about the jury have merit." *State v. Coury*, 697 S.W.2d 373, 379 (Tenn. Crim. App. 1985) (citing *Hale v. State*, 198 Tenn. 461, 473, 281 S.W.2d 51, 57 (1955); *McCook v. State*, 555 S.W.2d 411, 413 (Tenn. Crim. App. 1977)). There is nothing in the record to show that Defendant suffered any prejudice as a result of the juror selection process utilized by the trial court. Accordingly, we find no error and Defendant is not entitled to relief on this issue.

## C. Motion to Suppress

In her next argument Defendant contends that the trial court erred in denying her motion to suppress evidence seized as a result of the search of her residence. Specifically, Defendant argues that the trial court erred in failing to grant her motion to suppress because (1) the affidavit to the search warrant failed to state adequate probable cause to believe that the substances sought to be seized by the search warrant were located at Defendant's residence at the time the warrant was issued, and (2) the affiant to the search warrant failed to adequately provide the issuing magistrate

sufficient information to establish the veracity and basis of knowledge of the informant as required by the two-prong *Aguilar-Spinelli* test.

The findings of fact made by the trial court at the hearing on a motion to suppress are binding upon this court unless the evidence contained in the record preponderates against them. *State v. Ross*, 49 S.W.3d 833, 839 (Tenn. 2001). The trial court's findings from the hearing on the motion to suppress were not included in the record on appeal. The record contains only a "Statement of the Evidence" submitted by Defendant in regard to the hearing on the motion to suppress. Tenn. R. App. P. 24(c). However, the issue raised by Defendant concerns whether the affidavit established probable cause sufficient to support the search warrant. As discussed below, "Tennessee law is clear that in determining whether or not probable cause supported issuance of a search warrant only the information contained within the four corners of the affidavit may be considered." *State v. Keith*, 978 S.W.2d 861, 870 (Tenn. 1998). As such, the trial court's findings are not necessary for our review.

Under both the Fourth Amendment to the United States Constitution and Article I, section 7, of the Tennessee constitution, no warrant may be issued except "upon probable cause supported by oath or affirmation." The Fourth Amendment warrant requirement demands that a probable cause determination be made by a neutral and detached magistrate. *State v. Valentine*, 911 S.W.2d 328, 330 (Tenn. 1995); *State v. Jacumin*, 778 S.W.2d 430, 431 (Tenn. 1989); *State v. Moon*, 841 S.W.2d 336, 338 (Tenn. Crim. App. 1992). Probable cause has generally been defined as "a reasonable ground for suspicion, supported by circumstances indicative of an illegal act." *State v. Johnson*, 854 S.W.2d 897, 899 (Tenn. Crim. App. 1993). If probable cause is absent, the magistrate is not empowered to issue a warrant. When reviewing the issuance of a search warrant, this Court must determine whether the magistrate had a substantial basis for concluding that a search warrant would uncover evidence of wrongdoing. *Jacumin*, at 432 (citations omitted). "[I]n passing on the validity of a warrant, the reviewing court may consider *only* the information brought to the magistrate's attention." *Jacumin*, 778 S.W.2d at 431-32. We may not consider any evidence that was not included in the affidavit but was known by the affiant or provided to or possessed by the issuing magistrate. *State v. Carter*, 160 S.W.3d 526, 533 (Tenn. 2005); *State v. Henning*, 975 S.W.2d 290, 295 (Tenn. 1998). The magistrate's judgment is entitled to great deference on appeal. *Jacumin*, 778 S.W.2d at 431-32.

The affidavit in the present case included information supplied by a confidential informant. In order to establish probable cause, an affidavit may include hearsay information supplied by a confidential informant. *See Henning*, 975 S.W.2d at 294-95. Where the hearsay information is supplied by a criminal informant, a two-prong test is applied in determining the reliability of the information. *State v. Smotherman*, 201 S.W.3d 657, 662 (Tenn. 2006) (citing *State v. Williams,* 193 S.W.3d 502, 507 (Tenn. 2006); *State v. Jacumin*, 778 S.W.2d at 436). "The magistrate issuing the search warrant must be informed of 1) the basis of the informant's knowledge and 2) either the basis of the informant's credibility or the reliability of the informant's information." *Smotherman*, 201 S.W.3d at 662 *(*citing *State v. Cauley,* 863 S.W.2d 411, 417 (Tenn. 1993)). Independent police corroboration may compensate for deficiencies in either prong. *See Jacumin*, 778 S.W.2d at 436.

However, each prong must be considered and satisfied separately to establish probable cause. *Williams*, 193 S.W.3d at 507. The affidavit must contain more than conclusory allegations. *Moon*, 841 S.W.2d at 338.

The bulk of Defendant's argument as to the deficiency of the affidavit is a restatement of the "Statement of the Evidence" from the hearing on the motion to suppress. The relevant portions of the affidavit given by the affiant, Investigator McGowan, in support of the search warrant provide as follows:

## VERACITY OF INFORMANT

THE AFFIANT HAS RECEIVED INFORMATION FROM AN INFORMANT WHO HAS PREVIOUSLY GIVEN RELIABLE INFORMATION THAT LED LAW ENFORCEMENT TO THE DISCOVERY OF CRIMINAL EVIDENCE OR WHICH LED TO THE CONVICTION OF A PERSON CHARGED WITH A VIOLATION OF TENNESSEE LAW. THAT INFORMATION IS AS FOLLOWS: THAT LINDA BATTS WAS SELLING A LARGE AMOUNT OF METHAMPHETAMINE THAT WAS COMING FROM OUTSIDE OF WEAKLEY COUNTY TN. AND THAT THIS WAS AN ONGOING SALES OPERATION.

THIS INFORMANT[']S INFORMATION IS RELIABLE BECAUSE PREVIOUS INFO FROM THIS INFORMANT LED TO THE DISCOVERY OF ILLEGAL NARCOTICS AND ARRESTS AND CONVICTIONS.

## BASIS OF KNOWLEDGE

THE AFFIANT BELIEVES THAT LINDA BATTS HAS POSSESSION OF THE ABOVE DESCRIBED PROPERTY BECAUSE (THE AFFIANT OBSERVED) OR (THE INFORMANT ADVISED) THE FOLLOWING: WITHIN 72 HOURS OF THE SIGNING OF THIS SEARCH WARRANT A [SECOND] CRIMINAL INFORMANT MADE A CONTROLLED PURCHASE OF SCH II METHAMPHETAMINE FROM LINDA BATTS. THE INFORMANT AND THE INFORMANT'S VEHICLE WERE BOTH SEARCHED BY THE AFFIANT AND NO DRUGS WERE FOUND. AN ELECTRONIC LISTENING DEVICE WAS THEN ATTACHED TO THE INFORMANT AND THE INFORMANT WAS GIVEN MONEY FOR PURCHASING METHAMPHETAMINE. THE SERIAL NUMBERS FROM THE CURRENCY [WERE] RECORDED BY THE AFFIANT. THE AFFIANT THEN FOLLOWED THE INFORMANT TO THE RESIDENCE OF LINDA BATTS AT 2040 PARIS HIGHWAY 54 AND WATCHED THE INFORMANT GO TO THE RESIDENCE. THE INFORMANT THEN PURCHASED A SMALL PLASTIC BAG OF CRYSTAL METHAMPHETAMINE AND LEFT THE RESIDENCE AND MET WITH THE AFFIANT AT A PREDETERMINED MEETING SPOT DOWN THE ROAD FROM BATTS['] RESIDENCE. THE INFORMANT GAVE THE AFFIANT THE BAG AND THE AFFIANT FIELD TESTED THE CONTENTS OF THE BAG WITH A POSITIVE FIELD TEST RESULT FOR METHAMPHETAMINE. THE CRIMINAL INFORMANT WHO MADE THE CONTROLLED PURCHASE WAS OPERATING WITHOUT THE KNOWLEDGE OF THE PREVIOUS INFORMATION FOR THE FIRST CRIMINAL INFORMANT AND THE 1ST CRIMINAL INFORMANT HAS NO KNOWLEDGE THAT A CONTROLLED PURCHASE OF METH WAS

MADE BY THE 2ND INFORMANT. NEITHER INFORMANT WAS "WORKING" FOR THE AFFIANT TO ESCAPE CHARGES ON THEMSELVES.

Applying the two-prong test applicable to information from a criminal informant, we must conclude that the first criminal informant did not provide evidence sufficient to establish probable cause to support a search warrant. The informant's veracity was sufficiently established by the affiant's declaration that the informant had previously provided information resulting in the recovery of illegal narcotics, arrests, and convictions. *See Jacumin*, 778 S.W.2d at 436. However, the affiant failed to include information satisfying the first prong, the informant's basis of knowledge. *Id*. There is nothing in the affidavit stating how the first informant knew that Defendant was in possession of methamphetamine, or how the informant knew that Defendant was conducting an ongoing sales operation. Accordingly, we must conclude that the information provided by the first informant was not sufficient to establish probable cause.

With regard to the second informant, our reading of the affidavit reveals that the two-prong test was satisfied, and the information provided by the informant was sufficient to establish probable cause. Any deficiencies in the confidential informant's basis of knowledge and veracity were cured by independent police corroboration. The affidavit established that within seventy-two hours of the issuance of the search warrant, the affiant arranged for the informant to make a controlled purchase of methamphetamine from Defendant. Prior to the purchase, the affiant searched the informant's person and the informant's vehicle to insure that the informant was not in possession of a controlled substance. An electronic listening device was attached to the informant and the affiant provided the informant with money to purchase the drugs. The informant proceeded to Defendant's residence and purchased a "small plastic bag of methamphetamine." The purchase was monitored by the affiant using an electronic listening device. The drugs purchased by the informant were thereafter delivered to the affiant at a predetermined location and field tested positive for methamphetamine.

In both *State v. Powell*, 53 S.W.3d 258, 263 (Tenn. Crim. App. 2000), and the more recent case of *State v. Wanda Booker*, No. M2005-02788-CCA-R3-CD, 2006 WL 3498085, at *2 (Tenn. Crim. App., at Nashville, Nov. 21, 2006) (no Tenn. R. App. P. 11 application filed), this Court addressed analogous situations. In *Powell*, as in the present case, probable cause was based on a single drug purchase which occurred within seventy-two hours of the issuance of the search warrant. *Powell*, at 263. The affiant facilitated the controlled buy of a small amount of methamphetamine and monitored the entire event using an wiretap worn by the informant. *Id*. In *Booker*, probable cause for a warrant was based on a single controlled buy of an unspecified quantity of crack cocaine. *Booker*, 2006 WL 3498085, at *1. The buy occurred within ninety-six hours of the issuance of the warrant. In that case, the affiant also facilitated the buy and monitored the buy using a wiretap worn by the informant. *Id*. In both *Powell* and *Booker*, this Court concluded that independent police corroboration provided sufficient support to satisfy the two-pronged analysis for establishing probable cause for a search warrant with information provided by a criminal informant. *Powell*, at 263; *Booker*, 2006 WL 3498085, at *2.

In accordance with those opinions, we likewise conclude that the affiant's involvement in orchestrating the controlled buy and monitoring its progress provided sufficient corroboration for any deficiency in the second informant's veracity and basis of knowledge. As such, we conclude that the information in the affidavit provided a substantial basis for the magistrate to conclude that a search of Defendant's residence would uncover evidence of criminal wrongdoing. *Jacumin*, 778 S.W.2d 432. Therefore, the magistrate properly found probable cause existed for issuance of the search warrant. Accordingly, we find that the trial court did not err in denying Defendant's motion to suppress. Defendant is not entitled to relief on this issue.

## CONCLUSION

For the foregoing reasons, the judgments of the trial court are affirmed.

_____
THOMAS T. WOODALL, JUDGE

-11-